OPINION
{¶ 1} Defendant-appellant Harold L. Smith, Jr. appeals from his conviction and sentence for five counts of Rape and one count of Gross Sexual Imposition. Smith contends that the State did not present evidence sufficient to support his convictions. He also contends that the prosecutor acted improperly by making prejudicial arguments and introducing irrelevant and inflammatory evidence. Smith further claims that he was denied the effective assistance of counsel. Finally, he contends that the trial court erred by denying his motion for a mistrial following the introduction of evidence concerning other, uncharged crimes.
 {¶ 2} We conclude that the State failed to establish evidence sufficient to support two counts of Rape and one count of GSI. We further conclude that the introduction of evidence regarding a polygraph examination and other bad acts were so prejudicial as to merit a reversal of the remaining convictions. Accordingly, the judgment of the trial court is Reversed, Smith is ordered Discharged with respect to the Gross Sexual Imposition count and two of the Rape counts, and this cause is remanded for further proceedings on the other counts.
 I {¶ 3} In September, 2002, Smith was indicted on four counts of Rape involving two children, T.C. and J.C.T.C. and J.C. are male and female siblings. Three of the counts related to T.C. Smith pleaded not guilty to these charges. Subsequently, another indictment was issued charging Smith with two additional counts of Rape and two counts of Gross Sexual Imposition. The additional charges involved three additional children, R.C., R.C. and J.W.[1] Specifically, Smith was charged with two counts of Rape involving R.C., one count of GSI involving B.C. and one count of GSI involving J.W. Smith again pleaded not guilty.
 {¶ 4} All of the charges were consolidated and tried by a jury in April, 2003. The trial court granted Smith's motion for a directed verdict on the count of GSI regarding victim J.W. The jury returned a not guilty verdict on one of the Rape charges involving T.C. However, the jury found Smith guilty of the remaining charges. Specifically, Smith was convicted on two counts of Rape of T.C., one count of Rape of J.C., two counts of Rape of R.C. and one count of GSI with regard to B.C. The trial court sentenced Smith to life in prison, with parole eligibility after forty-five years. Smith was also classified as a sexually oriented offender. From his conviction and sentence, Smith appeals.
 II {¶ 5} Smith's Fourth assignment of error is as follows:
 {¶ 6} "The trial court erred to appellant's prejudice when it denied appellant's motion for judgment of acquittal and the conviction was against the sufficient weight of the evidence."
 {¶ 7} Though worded as a weight-of-the-evidence argument, Smith, in his fourth assigned error, argues that the evidence presented at trial was insufficient to support his convictions and that the trial court erred in denying his Crim.R. 29 motion for acquittal.
 {¶ 8} A Crim.R. 29 motion for acquittal challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The proper test to apply to such an inquiry on appeal is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259 which states:
 {¶ 9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 10} Smith was charged with Rape, in violation of R.C.2907.02(A)(1)(b), which provides:
 {¶ 11} "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when any of the following applies:
 {¶ 12} "* * *
 {¶ 13} "The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 14} Smith was also charged with two counts of GSI, in violation of R.C. 2907.05(A)(4), which provides:
 {¶ 15} "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 16} "* * *
 {¶ 17} "The other person, * * * is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 18} The primary difference between Rape and GSI is that the former involves "sexual conduct," whereas the latter involves only "sexual contact." These terms are defined as follows in R.C.2907.01:
 {¶ 19} "(A) `Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 {¶ 20} "(B) `Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 21} We begin with the conviction for GSI of B.C. At trial, B.C. testified that Smith touched her with his hands inside her clothes. Additionally, the physician who examined B.C. testified that she "nodded affirmatively" when asked whether Smith stuck his hands down her pants but that she "shook her head" and answered negatively when asked whether Smith inserted his finger into her. This represents the entire case presented by the State on this count.
 {¶ 22} We are forced to conclude that the State did not present evidence sufficient to support a finding of sexual contact. Specifically, although there is evidence that Smith placed his hands inside B.C.'s pants, there is no evidence to establish, beyond reasonable doubt, that he touched B.C. in any erogenous zone. Based upon the evidence presented by the State, we simply cannot say that the evidence supports a finding of sexual contact sufficient to support a conviction for GSI upon B.C.
 {¶ 23} We next turn to the two convictions for Rape of R.C. According to the State, Smith was charged with Rape involving fellatio and anal intercourse. The record demonstrates that the State presented the following evidence with regard to these two counts. First, R.C. testified that Smith "did some nasty stuff" to him. When questioned further, R.C. testified that Smith had kissed him on the lips and "put his face in my private area." Additionally when questioned regarding what constitutes a private area, R.C. identified his penis as his penis, but stated that another part of his body was his private area; in other words, he did not identify his penis as his "private area." The examining physician testified that R.C. had informed him that Smith had "put his face on my private." The physician did find evidence of anal scar tissue and an irregularly shaped anus, which he classified as "very suspicious" but "not proof of sexual abuse." He also presented testimony that the findings would not be inconsistent with constipation. Finally, a therapist who evaluated R.C. testified that the child informed her that Smith had kissed him "on his butt" and "all over."
 {¶ 24} Smith contends that the State has failed to present sufficient evidence of sexual conduct consisting of either fellatio or anal intercourse. We agree. There is no evidence in this record to support a finding, beyond reasonable doubt, that anal intercourse occurred.
 {¶ 25} On the issue of whether the State proved Rape with regard to its claim that Smith performed fellatio on R.C., we again are constrained to find that the elements were not sufficiently proven. Fellatio has been defined as "[a] sexual act in which the mouth or lips come into contact with the penis." Black's Law Dictionary (6 Ed. 1990) 616. See also, State v.Long (1989), 64 Ohio App.3d 615, 618. Even if a juror were to credit the testimony that Smith kissed R.C. on his private area, the boy's own testimony demonstrates that he was not referring to his penis when he referred to his private area. To the contrary, the boy's testimony indicates that he considered his buttocks to be his private area, a fact that is corroborated by the therapist's testimony that R.C. told her that Smith kissed him on "his butt." The evidence in this record is insufficient to prove this count of Rape beyond reasonable doubt.
 {¶ 26} Smith next contends that the State did not present sufficient evidence to establish his Rape conviction with regard to the victim, J.C. Specifically, he claims that there is no evidence to support a finding of sexual conduct. We disagree.
 {¶ 27} A review of the transcript reveals that both J.C.'s therapist and examining physician testified that J.C. had informed them that while taking a bath with him, Smith had pulled him back onto his lap and had placed his finger in J.C.'s "butt." The therapist also testified that J.C. had informed her that Smith had placed his penis in the child's rectum. We conclude that this evidence, if credited by the jury, is sufficient to support a finding, beyond reasonable doubt, of Rape by digital penetration of the anus. There is nothing inherently implausible or incredible in this testimony, and we cannot say that the jury lost its way when it chose to credit this testimony.
 {¶ 28} Finally, Smith contends that his convictions for rape of T.C. are not supported by sufficient evidence. One of the counts involved digital penetration of the child's vagina, while the other count involved vaginal intercourse. The record reveals that T.C. specifically testified that Smith placed his finger in her "kitty cat," and that she testified that he "put his thing in my front side" and that "it hurt." T.C.'s testimony, if believed, is sufficient to have permitted the jury reasonably to infer that Smith penetrated T.C.'s vagina with his finger and his penis, thus supporting these two convictions for Rape.
 {¶ 29} Smith's Fourth Assignment of Error is sustained with respect to the two convictions for Rape upon R.C. and the one count of Gross Sexual Imposition upon B.C. Smith's Fourth Assignment of Error is overruled with respect to the conviction for Rape upon J.C. and the two convictions for Rape upon T.C.
 III {¶ 30} Smith's Third Assignment of Error is as follows:
 {¶ 31} "The cumulative effect of prosecutorial misconduct deprived appellant of due process of law and a fair trial."
 {¶ 32} Smith contends that the misconduct of the prosecutor during trial deprived him of a fair trial. Specifically, he contends that the prosecutor acted improperly by: (1) referring to him as a "sexual predator" during opening statement; (2) vouching for the credibility of State witnesses; (3) submitting photographs of Smith's van and of the victims; (4) permitting the submission of any evidence or testimony regarding a polygraph examination; and (5) permitting testimony of penile penetration of J.C., when the only charge was for digital penetration.
 {¶ 33} We note, as candidly admitted by appellate counsel, that trial counsel failed to raise objections to any of the above-cited errors. Therefore, pursuant to State v. Jenks
(1991), 61 Ohio St.3d 259, 282, any "notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Plain error does not exist unless, but for the error, the outcome at trial would have been different.State v. Moreland (1990), 50 Ohio St.3d 58, 62.
 {¶ 34} We begin with the claim that the prosecutor acted improperly by repeatedly referring to Smith as a "sexual predator" during opening statements. A review of the transcript does reveal that the prosecutor did make these references at least sixteen times during his opening statement. However, given the nature of this case, we find no fault in this type of statement. Given that the State charged Smith with Rape and GSI of five different child victims, from three different families, we cannot say that the prosecutor acted improperly in characterizing Smith as a sexual predator. There is nothing in the record of the opening statements to suggest that the prosecutor was using the term "sexual predator" as a legal term of art, and a lay juror would most likely agree to a characterization of the acts with which Smith was charged as the acts of a sexual predator.
 {¶ 35} Smith next claims that the prosecutor improperly vouched for the credibility of three of the State's witnesses. Specifically, during closing argument, the prosecutor stated that one of the victim's was "not making this up." An examination of the record shows that this argument was made in relation to the fact that Smith allegedly made a statement, during a polygraph examination, tending to incriminate himself on this charge; hence, the prosecutor argued that given this evidence, the girl's accusation was not subject to disbelief. Therefore, we find no fault in this statement.
 {¶ 36} Additionally, Smith contends that the prosecutor improperly indicated that the testimony of two police officers was credible. Pursuant to State v. Carpenter (1996),116 Ohio App.3d 615, a prosecutor may argue that certain evidence tends to make a witness's testimony more or less credible. Id. at 624. However, a prosecutor may not state his own opinion as to whether a witness is telling the truth or lying. Id. In this case, the prosecutor stated that the two police officers would not jeopardize their careers by lying about this one case. We do not find this to be improper argument. It is a reasonable invitation to the jury to infer that police officers would not jeopardize their careers by lying about a case in which they have no personal interest.
 {¶ 37} Next Smith complains that the prosecutor improperly presented "numerous prejudicial inflammatory and/or irrelevant" exhibits. First, he complains that the State improperly introduced five photographs of his van. Count Eight of the indictment involves an allegation that Smith committed the offense of GSI with regard to J.W. The facts surrounding that allegation involve the claim that Smith took J.W. into his van during a party and proceeded to touch her in a sexual manner. However, following the conclusion of the State's case, the trial court dismissed this count, pursuant to Crim.R. 29, for failure of the State to present sufficient evidence on the charge.
 {¶ 38} From our review of the record, it is clear that evidence concerning Smith's van was relevant only to the facts surrounding this dismissed count. Therefore, any evidence relating to the van was certainly irrelevant and possibly prejudicial. We are not prepared to say that the admission of these photographs rises to the level of plain error. However, should the State decide to re-try Smith on the surviving charges, these photographs would appear to have no relevance to those charges.
 {¶ 39} Smith next complains that the State improperly "presented evidence by way of four photographs and medical examination testimony through [the examining physician] referencing sexual penetration of B.C. when the indicted act which Appellant was on trial for [involved] sexual contact," rather than sexual conduct.
 {¶ 40} From our review of the record, we note that the examining doctor testified that when B.C. presented to him he was not sure, given the history that she presented, whether she had been subject to vaginal or anal penetration. Therefore, he testified that he conducted an examination of both her vaginal and anal areas. He further testified that he discovered no abnormal findings on examination, and was unable to find any evidence of penetration. The doctor used the photographs in conjunction with his testimony. We find no error or prejudice in this testimony or the use of the photographs. Indeed, this evidence was favorable to Smith.
 {¶ 41} Next, Smith argues that the prosecutor improperly submitted evidence relating to the penile penetration of J.C., when the State admitted that the only indicted act with regard to J.C. involved digital penetration. He further complains that the examining physician again improperly used photographs of J.C.'s anal examination during his testimony. From our review of the record, it is clear that the photographs of J.C.'s anal area were relevant to the doctor's testimony regarding the digital penetration of J.C.'s anus. Therefore, we find no error in the introduction of this evidence.
 {¶ 42} The only evidence regarding penile penetration was presented by the therapist who examined J.C. She testified that J.C. informed her that Smith put his penis and his finger in the child's rectum. The State does not refute Smith's argument that this represents testimony regarding an uncharged crime. Although there is an obvious danger of unfair prejudice in admitting evidence of an uncharged bad act, the jury is presumed to have considered the evidence relevant to the charge of digital penetration, in accordance with the instructions of the trial court, and we cannot say that the introduction of the therapist's testimony concerning penile penetration rises to the level of plain error.
 {¶ 43} Finally, Smith contends that the State improperly introduced evidence regarding a polygraph examination that was started, but not completed. A review of the record demonstrates that Springfield Police Officer, Joseph Tedeschi, testified that he was assigned to investigate the allegations against Smith. He testified that during the course of his investigation he asked whether Smith would be willing to undergo a polygraph examination. According to Tedeschi, Smith agreed to the examination. Tedeschi further testified that during the examination, Smith indicated that he had penetrated T.C.'s vagina with his finger. According to the officer, the polygraph examination was not completed.
 {¶ 44} During the course of Tedeschi's testimony, the State introduced a written statement by Tedeschi concerning the polygraph examination and Smith's alleged incriminating statement. The basis for the introduction of this statement is not clear, and appears to violate the prohibition against hearsay. In any event, the statement indicated that Smith admitted that he digitally penetrated T.C.'s vagina. The statement also contained the following passage:
 {¶ 45} "Erwin began the [polygraph] test and began the first series of questions. The questions pertaining to [T.C.] were asked to either be rephrased and/or repeated. It appeared that the questions Smith had agreed to moments before were now problematic. Mrs. Erwin stopped the test and explained to Smith that she was able to see a fluctuation in his heart rate although he did not answer the questions."
 {¶ 46} In Ohio, the results of polygraph examinations are not admissible unless both parties stipulate to admission. State v.Jackson (1991), 57 Ohio St.3d 29, 37. Furthermore, the defendant must have the opportunity to cross-examine the polygraph operator. State v. Souel (1978), 53 Ohio St.2d 123, 133. In this case, the State introduced evidence regarding a polygraph examination through Tedeschi's testimony and the admission of the statement written by Tedeschi, despite the fact that Smith did not stipulate to the admissibility of the examination. Furthermore, a reading of Tedeschi's statement, which was available to the jury, suggested an inference that Smith failed the portion of the examination to which he did submit. However, according to the testimony of Tedeschi, the test operator was not available to testify at Smith's trial, and therefore, Smith could not cross-examine the operator in order to refute the implication that he did not pass the examination.
 {¶ 47} We conclude that the admission of Tedeschi's testimony and written statement regarding the polygraph examination was improper, and that a prosecutor should be aware of the requirements for the proper admission of evidence concerning a polygraph examination. Furthermore, based upon the transcript, it appears likely that the State introduced the written statement with the sole purpose of presenting the jury with evidence that Smith did not pass his polygraph examination. We conclude that this error rises to the level of plain error. We further conclude that this error is so egregious as to require reversal of the convictions involving J.C. and T.C.
 {¶ 48} Smith's Second Assignment of Error is overruled in part and sustained in part.
 IV {¶ 49} Smith's First Assignment of Error is as follows:
 {¶ 50} "The trial court erred to appellant's prejudice when it overruled appellant's motion for a mistrial and admitted evidence in violation of the rape shield statute."
 {¶ 51} Smith contends that the trial court should have granted his motion for a mistrial following the testimony of a witness for the State. Specifically, he objects to the following colloquy between the prosecutor and the mother of two of the victims regarding a van purchased by the witness for Smith:
 {¶ 52} "Q: Now, this van, did you buy that van?
 {¶ 53} "A: Yes, I did.
 {¶ 54} "Q: * * * Why did you title it in the defendant's name?
 {¶ 55} "A: Because I had fines, and I couldn't get it titled in my name.
 {¶ 56} "* * * *
 {¶ 57} "Q: * * * [D]id you ask [Smith] for the van back?
 {¶ 58} "A: It was before the party.
 {¶ 59} "Q: Why did you want the van back?
 {¶ 60} "A: Because I heard that — that on July 3 —
 {¶ 61} "MR. THOMAS: Objection, hearsay.
 {¶ 62} "THE COURT: Well, this is not for the truth, I assume. It's just why she wanted the van back.
 {¶ 63} "MR. WILSON: That's correct, Your Honor.
 {¶ 64} "THE COURT: Okay. The jury will not consider the truth of the statement but simply her reason for wanting the van.
 {¶ 65} "Q: Why did you want the van?
 {¶ 66} "A: Because on July 3 on my birthday, he went out to the fairgrounds; and he supposedly had two young girls in the van with him."
 {¶ 67} Smith's counsel again objected to the testimony, and made a motion for a mistrial. The trial court overruled the motion for a mistrial, and gave the jury the following admonition:
 {¶ 68} "* * * You're not to consider the statement as being true or having any bearing on the case. It's simply her reason why she wanted the van back. It may be entirely false. Just disregard that statement except to why she wanted the van back."
 {¶ 69} Smith argues that this testimony falls "squarely within the statutorily prohibited evidence rule of the rape shield statute." He further argues that by eliciting the testimony the State impermissibly introduced evidence of other "crimes, wrongs or acts" in violation of Evid.R. 404(B).
 {¶ 70} Evid.R. 404(B) provides:
 {¶ 71} "Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 72} Similarly, R.C. 2945.59 provides that evidence of other crimes may be admissible to show "motive or intent, the absence of mistake or accident on [defendant's] part, or the defendant's scheme, plan, or system in doing the act in question."
 {¶ 73} In this case, it appears likely from reading the transcript that the prosecutor knew, before asking the question, the reason the witness wanted the van back. It is clear that this testimony involves allegations of other acts that are not admissible under the rules of evidence or pursuant to statute. Furthermore, the issue of why the witness wanted Smith to return to the van was not relevant or probative to any of the charges against Smith, including the charge of GSI against J.W. that was subsequently dismissed. Even though that count of GSI was alleged to have occurred inside the van, the question of why the witness wanted the van back was immaterial to any issue in this case. The testimony elicited by the prosecutor, besides being inadmissible hearsay, was highly inflammatory and prejudicial.
 {¶ 74} The jury was given information regarding a rumor that Smith "supposedly" had two young girls in his van, which is similar to the facts surrounding the GSI count involving J.W. A juror could easily have inferred, from this improper evidence, Smith's propensity to have committed the crimes charged. By introducing this testimony, the State invited the jury to convict based upon other misconduct, rather than upon the evidence material to the charged offenses. This deprived Smith of his right to a fair trial.
 {¶ 75} Additionally, although the trial court admonished the jury, we conclude that the admonition was deficient. By its very language, the trial court did not prevent the jury from considering the witness's statement that Smith had two young girls in the van. Had the trial court instructed the jury to disregard the statement entirely, we might be less inclined to find prejudicial error. Under the circumstances of this case, we conclude that a mistrial was warranted, and that the trial court abused its discretion by denying Smith's request.
 {¶ 76} Smith's First Assignment of Error is sustained.
 V {¶ 77} Smith's Third Assignment of Error is as follows:
 {¶ 78} "Appellant was denied a fair trial and due process of law by the prejudicial ineffective assistance of trial counsel."
 {¶ 79} Smith contends that he was denied the effective assistance of counsel at trial. Specifically, he claims that trial counsel's performance was deficient because counsel failed: (1) to object to the consolidation of the two indictments and to move for a severance of the charges; (2) to seek suppression of the incriminating statement Smith allegedly made during the polygraph exam; (3) to seek suppression of evidence regarding the polygraph examination and to object to the introduction of that evidence; (4) to object to the introduction of the photographs of Smith's van; (5) to object to the introduction of photographs of B.C.'s vaginal and anal area and testimony regarding penile or digital penetration of B.C.; (6) to object to the introduction of photographs of J.C.'s anal area and evidence regarding penile penetration; (7) to object to the prosecutor's characterization of him as a sexual predator; and (8) to object to the prosecutor's "improper conduct in vouching for three witness's [sic] during closing argument."
 {¶ 80} We evaluate ineffective assistance arguments under an analysis derived from Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Specifically, for a conviction to be reversed on the basis of ineffective assistance of counsel, the defendant must show "that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." State v. Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490.
 {¶ 81} We begin with the claim that trial counsel's performance was deficient for failing to object to the consolidation of the indicted charges and for failing to seek a severance of the charges. Smith contends that based on the number of charges and victims "it would have been very reasonable to move for a severance under a prejudicial joinder theory." This issue has been rendered moot by the fact that the only remaining charges that may be re-tried on remand involve T.C. and J.C. Since both of these victims are siblings, and since the allegations involving them were charged in the same indictment, Smith's argument is rendered moot.
 {¶ 82} We next address the claim that trial counsel should have sought the suppression of Smith's alleged incriminating statement with regard to the digital penetration of T.C. Smith does not state any basis for this argument. Furthermore, aside from the fact that the polygraph evidence was not redacted from the evidence regarding the statement, we have found no error in the admission of the statement.
 {¶ 83} Next Smith contends that trial counsel should have sought the suppression of evidence relating to the polygraph examination and should have objected to the introduction of all evidence regarding the examination. We agree that counsel should have objected to the introduction of this evidence.[2] As previously stated, the admission of any evidence regarding the polygraph examination was unfairly prejudicial and contrary to established law. Counsel's failure to raise any objection thereto was deficient. Furthermore, there is a reasonable probability that but for the admission of the polygraph evidence, Smith might not have been convicted.
 {¶ 84} Smith also contends that trial counsel should have objected to the introduction of photographs of his van. We agree. The van was relevant to just one of the charges in this case — the charge of GSI involving J.W. This charge was dismissed on a directed verdict. The photographs of the van had no relevance to any of the remaining charges. At the point the State asked to have these photographs admitted, the only charge to which they had any relevance had been dismissed.
 {¶ 85} We conclude that counsel was deficient for failing to object to these photographs. While we cannot say that but for the admission of these pictures Smith would have been acquitted, we can say that the admission of irrelevant evidence in a case already rife with prejudicial error substantially undermines confidence in the correctness of the result of the trial, giving rise to a reasonable probability that, but for these failures, the result would have been different.
 {¶ 86} Next Smith contends that counsel should have objected to the pictures of B.C.'s vaginal and anal area and testimony of penile or digital penetration. This argument is rendered moot by the fact that we are reversing Smith's conviction for GSI involving B.C., and we are ordering him discharged upon that count, based upon our conclusion that there is insufficient evidence in this record to support a conviction.
 {¶ 87} Smith similarly claims that counsel was ineffective for failing to object to photographs of J.C.'s anal area and evidence regarding penile penetration. With regard to the introduction of the photographs, we find that counsel's performance was not deficient. These photographs were relevant to demonstrate the facts to which the examining physician testified regarding anal injuries to J.C., and were therefore properly admitted.
 {¶ 88} We agree with Smith's claim that the introduction of evidence regarding penile penetration of J.C. was improper, given that Smith was not charged with that offense. However, there was only one reference made to this act and that was made by the examining therapist. Counsel may wisely have elected not to object to this statement for fear that an objection would draw more attention to it. Therefore, we cannot say that counsel's decision was the result of deficient representation.
 {¶ 89} Finally we address Smith's contention that counsel should have objected to the prosecutor's use of the term "sexual predator" and to the prosecutor's "improper vouching for three witnesses." As previously stated, we conclude that the prosecutor did not act improperly with regard to these matters. Therefore, we decline to find that counsel was deficient in failing to interpose objections.
 {¶ 90} Smith's Third Assignment of Error is sustained in part and overruled in part.
 VI {¶ 91} Smith's Fourth Assignment of Error having been sustained in part and overruled in part, his two convictions for Rape of R.C. and one conviction for Gross Sexual Imposition of B.C. are Reversed, and he is ordered Discharged as to those offenses.
 {¶ 92} Smith's First Assignment of Error having been sustained, and his Second and Third assignments of error having been sustained in part, his two convictions for Rape of T.C. and one conviction for Rape of J.C. are Reversed, and this cause is remanded for further proceedings in accordance with this opinion.
Brogan and Wolff, JJ., concur.
[1] R.C. and R.C. are male and female siblings. For the sake of clarity we shall refer to the female sibling as B.C. which corresponds with her nickname used during trial. J.W. does not appear to be related to the other victims.
[2] It is not clear from this record that trial counsel was aware that the State intended to introduce the polygraph evidence. Therefore, we cannot say that counsel was ineffective for failing to file a motion to suppress this evidence.