OPINION
{¶ 1} Defendant-appellant, John R. Crosky, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part that judgment and remand the matter for resentencing.
 {¶ 2} On May 5, 2004, a Franklin County Grand Jury indicted appellant with 17 counts alleging rape, gross sexual imposition, child endangering, and disseminating matter harmful to juveniles. All the counts involved appellant's alleged sexual abuse of *Page 2 
J.S.[1] The indictment alleged 8 counts of rape in violation of R.C.2907.02. These counts are Nos. 2, 4, 9, 10, 12, 13, 14, and 16. Each of the rape counts alleged that appellant engaged in sexual conduct with J.S. when she was less than 13-years old. Specifically, the indictment alleged that: count 2 occurred between August 24, 1997 and July 31, 1998 and involved vaginal penetration; count 4 occurred between August 1, 1998 and July 31, 1999 and involved vaginal penetration; count 9 occurred between August 1, 1999 and July 31, 2000 and involved digital vaginal penetration; count 10 occurred between August 1, 1999 and July 31, 2000 and involved vaginal penetration; count 12 occurred between May 1, 2000 and June 1, 2001 and involved cunnilingus; count 13 occurred between January 1, 2000 and June 1, 2001 and involved vaginal penetration; and counts 14 and 16 occurred between August 1, 2000 and July 31, 2001 and involved vaginal penetration.
 {¶ 3} The indictment further alleged 7 counts of gross sexual imposition in violation of R.C. 2907.05 ("GSI"). These counts are Nos. 1, 3, 5, 6, 11, 15, and 17. Each of the GSI counts alleged that appellant had sexual contact with J.S. when she was less than 13-years old. Specifically, the indictment alleged that: count 1 occurred between August 24, 1997 and December 31, 1998; count 3 occurred between August 24, 1997 and July 31, 1998; count 5 occurred between August 1, 1998 and July 31, 1999; count 6 occurred between August 24, 1998 and December 31, 1999; count 11 occurred between August 1, 1999 and July 31, 2000; and counts 15 and 17 occurred between August 1, 2000 and July 31, 2001. *Page 3 
 {¶ 4} Count 7 of the indictment alleged that appellant, between August 24, 1998 and December 31, 2000, disseminated to J.S. material that is obscene or harmful to juveniles when she was less than 13-years old in violation of R.C. 2907.31. Count 8 of the indictment alleged that appellant, between August 1, 1999 and June 1, 2001, recklessly encouraged, used, or allowed J.S., who was under 18-years old, to be photographed for the production or dissemination of material that he knew or reasonably should have known was obscene, sexually-oriented matter, or nudity-oriented matter in violation of R.C. 2919.22 ("child endangering").
 {¶ 5} The indictment also charged appellant's wife, Julie Crosky, with one count of rape in violation of R.C. 2907.02 and two counts of child endangering in violation of R.C. 2919.22.
 {¶ 6} On May 11, 2004, appellant and Julie Crosky entered not guilty pleas to the charges. Attorney Douglas Shaw represented both appellant and Julie Crosky at this time. At a pre-trial hearing on July 7, 2004, however, attorney Mark Miller, a partner in the same law firm with Shaw, signed an entry to continue appellant's trial. Shaw signed a similar entry for Julie Crosky. On the same day, Shaw filed a motion seeking to withdraw as counsel for Julie Crosky. Shaw indicated that he represented appellant and that Julie Crosky was eligible for appointed counsel. The trial court allowed Shaw to withdraw and appointed the public defender's office to represent Julie Crosky. Shaw continued to represent appellant.
 {¶ 7} A few months later, Julie Crosky requested new counsel. The trial court appointed attorney Myron Shwartz to represent her. On December 3, 2004, Shwartz filed a motion to separate Julie Crosky's trial from appellant's trial. Within days of that filing, *Page 4 
Julie Crosky requested permission to dismiss Shwartz and to retain new counsel. The trial court allowed Shwartz to withdraw, and Julie Crosky retained Mark Miller, Shaw's partner, to represent her. Shaw continued to represent appellant.
 {¶ 8} Because of the potential for a conflict of interest, Julie Crosky and appellant signed and filed a form entitled "Waiver of Conflict." Appellant acknowledged that Shaw and Miller had explained to him that it would be advantageous to have separate counsel due to the potential conflict of interest. He further acknowledged that he had considered the matter and that he knowingly waived any potential conflict of interest. For the next few months, Miller represented Julie Crosky and Shaw continued to represent appellant.
 {¶ 9} The trial court held a hearing on April 14, 2005 to discuss the issue of legal representation. The trial court expressed its concern about Shaw and Miller representing the co-defendants because they practiced together in the same law firm. Shaw told the trial court that he and Miller discussed the potential conflict of interest and Shaw assured the trial court that they would represent their client's individual interests. Shaw further assured the trial court that the Croskys did not have antagonistic defenses to the charges. Both appellant and Julie Crosky acknowledged the potential conflict of interest but were satisfied with their representation and sought to waive the conflict of interest. Expressing its concern that defense counsel may not be able to foresee how the defenses might change during the course of the case, the trial court took the matter under advisement.
 {¶ 10} At a subsequent hearing on April 18, 2005, the trial court continued to express its concern that Shaw and Miller could not independently represent their respective clients without potentially harming their partner's client. The trial court posed the example of a situation where the State would offer Julie Crosky a plea bargain in *Page 5 
exchange for her testimony against appellant. How, the trial court asked, could Miller independently advise her to accept a deal, the result of which would harm appellant, his partner's client? Miller advised the trial court that he and Shaw had discussed the situation and that they still felt there was no conflict because the Croskys had a common defense to the charges. The trial court again continued the matter to further deliberate.
 {¶ 11} The next day, the trial court questioned Shaw and Miller about the exact status of their representation of the Croskys. The trial court was under the impression that Miller was representing Julie Crosky and that Shaw was representing appellant. Based on motions that had been filed jointly by Shaw and Miller on behalf of both Croskys, the trial court wondered if the status of their representation had changed. Shaw and Miller advised the court that they would be co-counsel in the case, jointly representing both Julie Crosky and appellant. Julie Crosky appeared surprised by this statement and requested a few minutes to reconsider her choice of counsel. The trial court informed her (and appellant) that it could not understand how two attorneys from the same law firm could effectively represent two clients with potentially adverse interests. After a brief recess, Julie Crosky asked the trial court to appoint her new counsel. The trial court accepted her request and removed both Shaw and Miller as her counsel. The trial court also cautioned Shaw that it still had concerns about his continued representation of appellant.[2]
 {¶ 12} On June 2, 2005, the trial court held a hearing and again expressed its concerns about Shaw's representation of appellant, given Shaw's previous representation *Page 6 
of Julie Crosky in this matter. The trial court was concerned that information may have been shared between Shaw and Julie Crosky that could have been adverse to her but beneficial to appellant. The trial court advised Shaw that it would make a final decision about his continued representation of appellant at a later time.
 {¶ 13} At a hearing on August 24, 2005, the trial court ordered Shaw removed as appellant's counsel. Both Julie Crosky and appellant ultimately decided to represent themselves at trial. The trial court appointed standby counsel to assist them and continued the trial date for six months to allow them time to prepare for trial.
 {¶ 14} At trial, J.S. testified that she was born on August 24, 1988. She was 17-years old and a senior in high school when she testified. She met appellant in April 1998 when he started dating her mother, Julie Crosky. She was almost 10-years old at the time and she was in fourth or fifth grade. Appellant's relationship with Julie Crosky became serious and appellant began sleeping with Julie Crosky at her house. Apparently, J.S. often slept in her mother's bed. Appellant asked J.S. if she wanted to continue sleeping in the same bed with her mother. Although appellant's presence in her mother's bed made her uncomfortable, J.S. indicated she wanted to continue sleeping with her mother. While in bed one night, J.S. awoke to appellant and Julie Crosky having sex. After they were done, J.S. testified that appellant reached over to J.S. and placed his hand inside her underpants and touched her vagina. J.S. did not say anything and pretended to be asleep. She thought this incident occurred when she was in fifth grade.
 {¶ 15} J.S. testified that appellant touched her in a similar manner on other occasions. One incident she could recall occurred in the living room. Appellant, Julie Crosky, and J.S. fell asleep on an air mattress in front of the television. J.S. woke up to *Page 7 
appellant and Julie Crosky having oral sex. When they were done, appellant reached over to J.S. and stuck his fingers inside her vagina. Again, she did not say anything and rolled over, pretending to be asleep. J.S. testified that this incident occurred when she was in sixth or seventh grade.
 {¶ 16} J.S. also testified that she had pillow fights and squirt gun fights with appellant. If she "won" the game, appellant would buy her things, or she would get to punch him as hard as she wanted. If appellant "won" the game, he would get a prize, which included him either touching her breasts or vagina or licking her vagina. J.S. recalled one specific instance when appellant, after winning a prize, was licking her vagina when Julie Crosky walked into the room. J.S. also remembered two occasions when appellant licked her vagina after she had gone to the bathroom.
 {¶ 17} J.S. testified to other specific acts but she could not recall the time frame of those acts. She testified that appellant attempted to put his penis into her vagina but that it never went inside her. She also testified that the night before that act, appellant used a vibrator on her in the middle of the night, although he placed it outside of her pants. She indicated that these incidents may have occurred when she was in the sixth grade.
 {¶ 18} J.S. testified that the sexual abuse by appellant began when she was in fifth grade, after her school sent a letter home stating that the school was starting to teach sex education. In response to the letter, appellant and Julie Crosky showed J.S. drawings of body parts. J.S. was fine with this because she was happy to be prepared for what she was going to see in school. However, appellant and Julie Crosky also showed her magazines and videos of people having sex. She testified that some of the videos and magazines included images of a number of people having sex together at one time. *Page 8 
 {¶ 19} J.S. also testified that when appellant went out of town for work, he called her and asked her to take pictures of herself. She took pictures of herself clothed, but appellant then asked her if she could take pictures of herself naked. Although she felt uncomfortable doing this, appellant persisted and J.S. finally complied. J.S. gave the photos to Julie Crosky for mailing to appellant.
 {¶ 20} At trial, appellant denied that the alleged acts occurred and claimed that the charges were fabricated. Appellant cross-examined J.S. for several days about her allegations. He questioned her about her failure to tell anyone, including her friends, about the alleged abuse until years later. Appellant also showed J.S. a book/journal in which she denied having been sexually abused. Appellant also presented witnesses who testified that J.S. appeared to be a happy, nice girl.
 {¶ 21} The jury found appellant not guilty of counts 2 and 3, which alleged acts that occurred between August 1997 and July 1998. The jury found appellant guilty of the remaining 15 counts.[3] Following the trial court's adjudication of appellant as a sexual predator, it sentenced appellant to a total prison term of 30 years.
 {¶ 22} Appellant appeals and assigns the following errors:[4]
 Assignment of Error No. 1: The court of common pleas erred and deprived defendant-appellant of his right to counsel of choice as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when it disqualified his privately retained attorney (a) in the absence of any evidence in the record that a potential conflict of interest existed after *Page 9 
defense counsel's role had substantially changed from one of joint or simultaneous representation to one of successive representation, (b) without first conducting a hearing and issuing specific findings, (c) without engaging in an inquiry with him and his Codefendant to determine whether their written waivers were sufficient to cure any conflict that might exist, and/or (d) without giving due consideration to alternatives less drastic than disqualification of counsel.
 Assignment of Error No. 2: Defendant-Appellant was denied his right to the assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court accepted his waiver of counsel without making a sufficient inquiry to determine that he fully understood and intelligently relinquished his right to counsel and that he possessed an adequate apprehension of the nature of the charges and statutory offenses included within them, the range of allowable punishments thereunder, any possible defenses that he may have to the charges and mitigating circumstances, and the facts essential to an understanding of the case against him.
 Assignment of Error No. 3: Defendant-Appellant's convictions for rape, gross sexual imposition, endangering children, and disseminating material harmful to a juvenile are not supported by evidence sufficient to satisfy the requirements of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution; or alternatively, are against the manifest weight of the evidence.
 Assignment of Error No. 4: The jury's verdicts of not guilty as to Count 2 (rape based on vaginal penetration) and Count 3 (gross sexual imposition) of the indictment constitute a bar under the Double Jeopardy and/or Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution to Defendant-Appellant's convictions under Counts 4, 9, 10, 13, 14, and 16 (rape based on vaginal penetration) and Counts 1, 5, 6, 11, 15, and 17 (gross sexual imposition) for the reason that the State's failure to link the individual counts of the Indictment to distinct and differentiated incidents of each offense resulted in uncertainty as to what the jury actually found and such uncertainty must be resolved in his favor. *Page 10 
 Assignment of Error No. 5: The prosecution of Defendant-Appellant for multiple counts of rape and gross sexual imposition through the use of an indictment, bill of particulars, victim testimony, jury instructions, and verdict forms that failed to connect each count of the indictment to a distinct and differentiated incident of alleged sexual abuse (a) exposed him to conviction on the basis of facts not found by and/or not presented to the Grand Jury and further allowed the State unfettered discretion to extrapolate as many felony counts as it wished to charge over a four year time period, in violation of his rights under Art. I, Sections 10 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution, (b) violated his right to be informed of the nature and cause of the individual accusations against him as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution, (c) deprived him of his right to defend himself as to each of the counts of the indictment as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution, (d) deprived him of the protections of the Double Jeopardy Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and (e) violated his right to an individualized jury determination of guilt as to each count of the Indictment as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution.
 Assignment of Error No. 6: The following evidentiary and procedural rulings of the court during trial individually and/or in the aggregate deprived Defendant-Appellant of his right to a fundamentally fair jury trial, his right to confront and cross-examine his accuser, his right to present a meaningful defense, and his right to represent himself as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 16 of the Ohio Constitution as follows: by allowing incompetent testimony; denial of a more specific bill of particulars; limiting time for cross-examination of the state's only witness; intemperate judicial behavior; judicial expression of bias; interference with use of standby counsel; inequitable number of preemptory challenges; preventing a joint-defense and physically separating co-defendant's [sic] during trial; denial of impeachment of hostile witness; denial of right to argue *Page 11 
malicious prosecution; denial of right to present corroborating or demonstrative evidence; failure to appoint an investigator; failure to allow introduction of entire defense exhibit; improper restriction on voir dire; and the trial court giving erroneous legal advise.
 Assignment of Error No. 7: The trial court violated Crim.R.6(E) and deprived Defendant-Appellant of his right to exculpatory and/or impeachment evidence under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution when it refused to allow him to participate in an in camera inspection of the grand jury testimony and denied him use of the transcripts to impeach the alleged victim.
 Assignment of Error No. 8: The trial court committed plain error and violated Defendant-Appellant's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which incorporates principles of the Ex Post Facto Clause of Article I, Section 10 of the United States Constitution when it sentenced him to a 30 year prison term that exceeded the "maximum" sentence which could be imposed under the laws in effect at the time of his offense without applying any sentence enhancement factors found to be unconstitutional in State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. Alternatively, Defendant-Appellant was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution as a result of appointed counsel's failure to raise a constitutional challenge to his sentence.
 Assignment of Error No. 9: The aggregate 30 year prison term violated Appellant's rights under R.C. Chap. 2929 and his right of due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 16 of the Ohio Constitution, as the evidence does not support the imposition of maximum, consecutive prison terms. Per App.R. 5(C)(2), the aggregate prison term exceeds the maximum prison term for the most serious offense of conviction and appeals his consecutive prison terms pursuant to R.C. 2953.08(C). Also, the adjudication of Appellant as a sexual predator was entered without adequate notice under R.C. 2950.09(b)(2) to prepare for the hearing thereon and is not supported by the trial findings or by sufficient evidence. *Page 12 
 Assignment of Error No. 10: The trial court violated R.C. 2945.75 and denied Defendant-Appellant his rights to due process and trial by jury under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 5, 10 16
of the Ohio Constitution, when it convicted him of, and sentenced him on, six third degree felony counts of gross sexual imposition (Counts 1, 5, 6, 11, 15, and 17), one second degree felony count of endangering children (Count 8), and one fourth degree felony count of disseminating matter harmful to juveniles (Count 7), in the absence of a jury verdict setting forth the degree of offense for each count or a statement that the required aggravating element had been found to justify a conviction for the greater degree of offense for each count.
 {¶ 23} Appellant contends in his first assignment of error that the trial court violated his constitutional right to counsel when it disqualified his privately retained attorney of choice. We disagree.
 {¶ 24} "`[T]he standard of review for determining whether the court erred in its pretrial disqualification of defense counsel is whether it abused its broad discretion.'" State v. Keenan (1998),81 Ohio St.3d 133, 137, quoting State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 180. In reviewing the trial court's action, we must always keep in mind the context in which the ruling is made, and that "`[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict.'" Serra v. Michigan Dept. of Corr. (C.A.6, 1993) 4 F.3d 1348, 1354, quoting Wheat v. U.S. (1988), 486 U.S. 153,162-163, 108 S.Ct. 1692.
 {¶ 25} The Sixth Amendment to the United States Constitution guarantees that a criminal defendant shall have the assistance of counsel for his defense. Wheat, at 158. The "aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the *Page 13 
lawyer whom he prefers." Id. There is a presumptive right to employ one's own counsel. Keenan, at 137. That presumption may be overcome by a showing of an actual or serious potential for conflict. Id., citingWheat.
 {¶ 26} Shaw initially represented both appellant and Julie Crosky. He subsequently withdrew from representing Julie Crosky but continued to represent appellant. Julie Crosky, after dismissing several attorneys, ultimately hired Shaw's partner, Miller, to represent her. Shaw informed the trial court that, although he represented appellant and Miller represented Julie Crosky, they had participated in joint "strategy sessions." Thereafter, Shaw and Miller represented to the trial court that they were jointly representing appellant and Julie Crosky. Julie Crosky ultimately decided to seek new representation. Shaw continued to represent appellant, although the trial court cautioned him that it was still concerned about the potential conflict of interest. Ultimately, the trial court disqualified Shaw from representing appellant.
 {¶ 27} When the trial court disqualified Shaw, he no longer represented Julie Crosky. Thus, the situation was one of successive, not joint, representation. Successive representation occurs when counsel has previously represented a co-defendant or witness. McFarland v.Yukins (C.A.6, 2004), 356 F.3d 688, 701, citing Moss v. U.S. (C.A.6, 2003), 323 F.3d 445, 459. Successive representation may give rise to an actual conflict of interest. Moss, at 459; U.S. v. Culp (M.D.Fla., 1996), 934 F.Supp. 394, 397-398. A conflict of interest may arise in a successive representation situation where (1) counsel's earlier representation of the witness or co-defendant was substantially and particularly related to counsel's later representation of defendant; or (2) counsel actually learned particular confidential information during the prior representation of the witness or *Page 14 
co-defendant that was relevant to defendant's case. Enoch v.Gramley (C.A.7, 1995), 70 F.3d 1490, 1496, citing Smith v. White
(C.A.11, 1987), 815 F.2d 1401, 1405; U.S. v. Canty (E.D. Mich., 2006), No. 01-80571, 2006 WL 3469625.
 {¶ 28} Appellant claims that there was no evidence demonstrating even a potential conflict of interest in Shaw's representation. We disagree. There was clearly a serious potential conflict of interest inherent in Shaw's representation of appellant given Shaw's past representation of appellant's co-defendant in the same matter. In Keenan, the Supreme Court of Ohio found a potential conflict of interest when attorneys who had previously represented Keenan's co-defendant in litigation arising from the same set of facts sought to later represent Keenan.Keenan, at 136-137; see, also, U.S. v. Shwayder (C.A.9, 2002),312 F.3d 1109, 1118 (actual conflict where former representation of co-defendant arose from matters directly concerned with attorney's current representation of defendant).
 {¶ 29} Here, Shaw and his law partner represented appellant's co-defendant, Julie Crosky, in litigation arising from the same set of facts. Shaw acknowledged that he, Miller, appellant, and Julie Crosky had met and discussed defense strategy. His previous representation of Julie Crosky in this same matter, therefore, was substantially and particularly related to his ongoing representation of appellant. Thus, there was a potential conflict of interest if the trial court permitted Shaw to continue to represent appellant in this matter. See In reSmith, Ashtabula App. No. 2005-A-0048, 2007-Ohio-893, at ¶ 67 (no abuse of discretion disqualifying mother's attorney who previously represented minor child in the case). *Page 15 
 {¶ 30} Additionally, Shaw might have learned confidential information from Julie Crosky during his representation of her or when he and Miller jointly represented both of the Croskys. Id. at ¶ 66. Shaw would still have an ethical obligation to Julie Crosky to maintain those confidences.[5] See Serra, supra, at 1352 (disqualification of counsel who previously represented co-defendant wife); U.S. v. Pizzonia
(E.D.N.Y., 2006), 415 F.Supp.2d 168, 178, quoting U.S. v.Cunningham (C.A.2, 1982), 672 F.2d 1064, 1072 ("A serious conflict warranting disqualification may arise if the attorney is `potentially in a position to use privileged information obtained during prior representation' of the former client."). It is possible that some of that information may have exculpated appellant while harming Julie Crosky's case, yet Shaw would be prohibited from using that information.Serra; see, also, Culp, at 397-398 ("Because of the lawyer's continuing duty of confidentiality, [successive representation] of more than one defendant charged in the same criminal conspiracy inevitably presents a conundrum for the lawyer who is so engaged.").
 {¶ 31} It is not enough to argue, as appellant does, that no conflict existed because plea negotiations had not been reopened with Julie Crosky, she continued to request a joint defense, and she was not likely to become a state's witness against appellant. The future events in this case were uncertain, and the trial court was faced with this decision months before any testimony was presented at trial. "A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants." Wheat, at 163. *Page 16 
 {¶ 32} Because of the serious potential conflict of interest arising from Shaw's ongoing representation of appellant following his representation of appellant's co-defendant in the same matter, the trial court did not abuse its discretion when it disqualified Shaw from representing appellant.[6] Appellant's first assignment of error is overruled.
 {¶ 33} By his second assignment of error, appellant contends that the trial court did not make a sufficient inquiry into his decision to waive his right to counsel and to represent himself at trial. We disagree.
 {¶ 34} A criminal defendant has a constitutional right to represent himself at trial. State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 89. A defendant may proceed without counsel if the defendant has made a knowing, voluntary, and intelligent waiver of the right to counsel. State v. Martin, 103 Ohio St.3d 385, 2004-Ohio-5471, at ¶ 24; see, also, Crim.R. 44(A) (defendant may forgo counsel after, being fully advised, knowingly, intelligently, and voluntarily waives right to counsel).
 {¶ 35} To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right.Johnson, quoting State v. Gibson (1976), 45 Ohio St.2d 366, paragraph two of the syllabus; Martin, at ¶ 39 ("[t]he trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel."). To be valid, a waiver of the right to counsel must be made with an *Page 17 
apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. Id. at ¶ 43; Gibson, at 377, quoting Von Moltke v.Gillies (1948), 332 U.S. 708, 723, 68 S.Ct. 316; State v. Suber,154 Ohio App.3d 681, 2003-Ohio-5210, at ¶ 15.
 {¶ 36} After the trial court disqualified appellant's attorney, he requested to proceed without counsel. The trial court questioned him about this choice. Appellant admitted that he knew he had a right to have a lawyer and that the trial court would appoint a lawyer for him if he could not afford one. The trial court explained to appellant the consequences of his decision, noting that appellant would be held to the same standard as a lawyer, including compliance with the rules of procedure and evidence. The trial court cautioned appellant that it could not provide him with legal assistance.
 {¶ 37} The trial court then asked appellant if he understood the charges pending against him. Appellant stated that he was "fully aware of those charges." The trial court asked appellant if he was aware that the penalties for those charges included a term of life imprisonment. Appellant responded in the affirmative. Appellant also stated that he was aware the sentences for the charges could be ordered to be served consecutively. The trial court also asked appellant if he knew what defenses might exist to the charges. Appellant replied that he "had plenty of answers to their charges."
 {¶ 38} After hearing additional warnings about proceeding without counsel, including the trial court's admonition that "in almost every case it would be my opinion that a trained lawyer would defend you far better than you could defend yourself," appellant *Page 18 
signed a form entitled "Waiver of Right to an Attorney" that listed the charges against him and the maximum penalties for each charge. He acknowledged in the form that he had a constitutional right to counsel but that he knowingly, intelligently, and voluntarily waived that right. With that, the trial court allowed appellant to proceed pro se, although it appointed stand-by counsel for appellant.
 {¶ 39} Appellant now claims the trial court failed to explain his possible defenses after he expressed confusion about them. However, the record does not reflect that appellant expressed any confusion about his defenses.[7] Appellant told the trial court that he had plenty of answers to the charges. The only concern he expressed was his ability to properly present those defenses. Appellant expressly recognized that proceeding without counsel might make it more difficult to present his defenses. Nevertheless, appellant chose to proceed without counsel. Moreover, contrary to appellant's assertion, a trial court is not required to advise a defendant of all available defenses or mitigating circumstances. A broader discussion of defenses and mitigating circumstances as applicable to the present charges is sufficient.State v. Trikilis, Medina App. No. 04CA0096-M, 2005-Ohio-4266, at ¶ 13;In re McDonald, Licking App. No. 06-CA-46, 2007-Ohio-2324, at ¶ 39.
 {¶ 40} Appellant also claims the trial court should have inquired about his educational background and prior experience with the criminal justice system. We disagree. Although a court may consider a defendant's age, education, and legal experience in making this decision, a trial court is not required to take these factors into *Page 19 
consideration. Trikilis, at ¶ 13, citing State v. Doane (1990),69 Ohio App.3d 638, 647. Nor does appellant demonstrate how these factors would have influenced the trial court's decision.
 {¶ 41} Appellant clearly and adamantly expressed his desire to represent himself at trial. See State v. Julian, Williams App. No. WM-06-009, 2007-Ohio-3568, at ¶ 57, citing Johnson, supra (noting that defendant's lack of confusion about what he wanted supported sufficiency of inquiry). The trial court assured itself that appellant knew of the dangers and disadvantages of self-representation, and that he was aware of the charges against him, the possible penalties, and available defenses. The trial court's inquiry of appellant was sufficient to determine that appellant's decision to represent himself was a voluntary, knowing, and intelligent choice. Appellant's second assignment of error is overruled.
 {¶ 42} Appellant contends in his third assignment of error that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss the appropriate standard of review for each of these evidentiary challenges.
 {¶ 43} In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio delineated the role of an appellate court presented with a challenge to the sufficiency of the evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the *Page 20 
defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Id., at paragraph two of the syllabus.
 {¶ 44} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must "give full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. A jury verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v.Treesh (2001), 90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 45} Preliminarily, to the extent appellant faults the State for failing to prove the exact dates of the offenses, we note the difficulties inherent in prosecuting cases of child abuse, especially cases involving a pattern of abuse occurring over years involving persons who reside in the same household. Often times, the victims are young and unable to remember exact dates and times of particular events, particularly where the abuse is alleged to have occurred over an extended period of time, such as in the case at bar. See State v.Mundy (1994), 99 Ohio App.3d 275, 296. Further, the exact date and time is not an essential element of these offenses. State v. Adams, Erie App. No. E-03-042, *Page 21 2004-Ohio-4673, at ¶ 14. Thus, a reasonable degree of latitude and inexactitude is allowed with respect to the timing of the offense. It is sufficient to prove that the alleged offense occurred at or about the time charged. State v. Reinhardt, Franklin App. No. 04AP-116,2004-Ohio-6443, at ¶ 20, citing State v. Madden (1984),15 Ohio App.3d 130, 131.
 {¶ 46} Appellant challenges the sufficiency of the State's evidence establishing the time frame for the indicted conduct. Because J.S. used various school years as the frame of reference in describing when certain events occurred, it is necessary to note J.S.'s age during those school years. J.S. testified that she was born on August 24, 1988. She was 17-years old and a senior in high school at the time of appellant's trial. In August of 1998, J.S. turned 10 and entered the 5th grade. In August of 1999, she turned 11 and began the 6th grade; in August of 2000, she turned 12 and began the 7th grade; and in August of 2001 (when the allegations in the indictment end), she would have turned 13 and began the 8th grade. J.S. testified that the sexual abuse by appellant started when she was in the 5th grade and ended when she was in the 8th grade.
 {¶ 47} We will first address the sufficiency of the evidence with respect to appellant's GSI convictions. In order to be convicted of GSI, the State had to prove beyond a reasonable doubt that appellant had sexual contact with J.S. when she was less than 13 years of age. R.C.2907.05(A)(4). Sexual contact is defined as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. R.C.2907.01(B). The trier of fact may infer a purpose of sexual arousal or gratification from the type, nature and *Page 22 
circumstances of the contact, along with the personality of the defendant. State v. West, Franklin App. No. 06AP-11, 2006-Ohio-6259, at ¶ 17; In re A.L., Butler App. No. CA2005-12-520, 2006-Ohio-4329, at ¶ 20.
 {¶ 48} It is not disputed that J.S. was under 13-years old at all relevant times in the indictment period. Thus, the question is whether or not the State presented sufficient evidence demonstrating that appellant engaged in sexual contact with her within the period of time alleged in the various counts of the indictment.
 {¶ 49} In count 1, the State alleged that appellant had sexual contact with J.S. between August 24, 1997 and December 31, 1998. J.S. testified that she was in the 5th grade when appellant first touched her in a sexual manner. She testified that she was sleeping in her mother's bed when she was awakened by appellant and her mother having sex. When appellant and her mother were done, appellant reached over to J.S. and touched her vagina underneath her pants. J.S. would have been in the 5th grade in the fall of 1998. Therefore, J.S.'s testimony is sufficient evidence for a trier of fact to find that appellant had sexual contact with J.S. as alleged in count 1.
 {¶ 50} In count 5, the State alleged that appellant engaged in sexual contact with J.S. between August 1, 1998 and July 31, 1999. In count 6, the State alleged similar conduct by appellant between August 24, 1998 and December 31, 1999. J.S. testified about two acts that occurred on successive nights when she was in the 5th or 6th grade. She testified that on the first night appellant touched her vagina, over her clothing, with a vibrator. She testified that on the second night he touched her vagina with his penis as he attempted to have vaginal sex with her. This testimony is also sufficient for a trier of fact to find that appellant engaged in sexual contact with J.S. Sexual contact includes *Page 23 
any physical touching, even through clothing, of an erogenous zone of another. West, at ¶ 20; State v. Jones, Cuyahoga App. No. 87411,2006-Ohio-5249, at ¶ 15; State v. Young (Aug. 15, 1997), Athens App. No. 96CA 1780. Additionally, the use of a vibrator to touch J.S. constitutes a "touching" for purposes of "sexual contact." State v. Jenkins (July 27, 2001), Miami App. No. 2000-CA-59. J.S. would have been in the 5th or 6th grade between August 1998 and December 1999. Therefore, J.S.'s testimony is sufficient for a trier of fact to find that appellant had sexual contact with J.S. as alleged in counts 5 and 6.
 {¶ 51} In count 11, the State alleged that appellant had sexual contact with J.S. between August 1, 1999 and July 31, 2000. J.S. testified that she was in the 6th or 7th grade when appellant put his hand underneath her shirt and touched her breasts, while they were lying together on an air mattress. J.S. would have been in the 6th grade between August 1, 1999 and July 31, 2000. Therefore, this testimony is sufficient evidence for a trier of fact to find that appellant had sexual contact with J.S. as alleged in count 11.
 {¶ 52} Finally, in counts 15 and 17, the State alleged that appellant had sexual contact with J.S. between August 1, 2000 and July 31, 2001. J.S. testified that by the time she was in the 7th grade, appellant would still touch her in a sexual manner but that the touching did not occur as often. However, she testified that during this time frame, she allowed appellant to touch or lick her vagina as a prize for winning a game, and that at night, he still would reach over to her and touch her breasts and vagina. J.S. would have been in the 7th grade between August 1, 2000 and July 31, 2001. Therefore, this testimony is sufficient evidence for a trier of fact to find that appellant had sexual contact with J.S. as alleged in counts 15 and 17. *Page 24 
 {¶ 53} Given J.S.'s testimony, appellant's six GSI convictions are all supported by sufficient evidence.
 {¶ 54} We next examine the sufficiency of the evidence supporting appellant's rape convictions. In order to be convicted of rape, the State had to prove beyond a reasonable doubt that appellant engaged in sexual conduct with J.S. when she was less than 13 years of age. R.C.2907.02(A)(1)(b). Sexual conduct is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 55} Again, it is not disputed that J.S. was under 13-years old at all relevant times in the indictment period. Thus, the question is whether or not the State presented sufficient evidence demonstrating that appellant engaged in the alleged sexual conduct with J.S. within the time frame alleged in the various counts of the indictment.
 {¶ 56} In count 9, the State alleged that appellant engaged in sexual conduct (digital vaginal penetration) with J.S. between August 1, 1999 and July 31, 2000. J.S. testified in great detail about an incident that occurred when she was in the 6th or 7th grade. J.S. testified that appellant put his fingers insider her vagina while they were lying together on an air mattress. J.S. would have been in the 6th grade between August 1999 and July 2000. This testimony is sufficient for a reasonable trier of fact to find that appellant engaged in sexual conduct with J.S. as alleged in count 9. State v. *Page 25 Smith, Clark App. No. 2003-CA-23, 2004-Ohio-665, at ¶ 28 (victim's testimony that defendant placed finger inside vagina sufficient to prove digital vaginal penetration).
 {¶ 57} In count 12, the State alleged that appellant engaged in sexual conduct (cunnilingus) with J.S. between May 1, 2000 and June 1, 2001. J.S. testified that when she was in the 6th or 7th grade, Julie Crosky walked into the room as appellant was licking her vagina. J.S. would have been in the 7th grade during most of the time frame alleged in count 12. This testimony is sufficient for a reasonable trier of fact to find that appellant engaged in sexual conduct with J.S. as alleged in count 12. State v. Brewer, Greene App. No. 03CA0074, 2004-Ohio-3572, at ¶ 34 (victim's testimony that defendant licked vagina sufficient to prove cunnilingus).
 {¶ 58} The remaining rape counts, all of which allege vaginal penetration, are more problematic. J.S. was very vague about other acts of sexual conduct between her and appellant. She testified that appellant touched her "more than once" while on the air mattress in the living room, but did not describe where or how appellant touched her. She testified about a number of instances when appellant won a game and would get to lick or touch her vagina as a prize. However, she was very vague in describing these incidents. She testified that when she was in the 6th grade, appellant continued to sleep over and that she sometimes slept in the same bed with appellant and her mother. However, while she testified that he would "reach over in the middle of the night sometimes," she did not provide any detail about where or how appellant touched her. She explained that he was "sometimes" able to go underneath her clothes and touched her breasts and vagina. She did not indicate during any of these instances that appellant penetrated her vagina. *Page 26 
 {¶ 59} This testimony is insufficient evidence for a trier of fact to have found that appellant vaginally penetrated J.S. as alleged in the remaining five rape counts. Although J.S. testified to a number of events in which appellant touched and licked her vagina, she did not testify about any instances of vaginal penetration as alleged in counts 4, 10, 13, 14, and 16. Therefore, as a matter of law, the evidence was insufficient to support appellant's rape convictions on these counts.
 {¶ 60} The State contends, however, that the language in the indictment which alleged that these counts were rape by vaginal penetration is mere surplusage and should not limit the State to proving rape only by vaginal penetration. See State v. Tebcherani (Nov. 22, 2000), Summit App. No. 19535. We disagree. The Fourth District Court of Appeals has stated that specific allegations in an indictment alleging the manner in which an offense is committed, even if surplusage, must be proved by the state. State v. Bowers, Hocking App. No. 06CA7,2007-Ohio-3986, at ¶ 36. We agree with the Fourth District.
 {¶ 61} While this court has never expressly addressed this specific issue, we have determined the sufficiency of the evidence supporting rape convictions by analyzing whether the State proved the specific sexual conduct alleged in each rape count. See State v. Frazier, Franklin App. No. 05AP-1323, 2007-Ohio-11, at ¶ 21-27 (evidence supported rapes counts alleging vaginal penetration and cunnilingus; evidence insufficient to support rape counts that alleged digital vaginal penetration); State v. Martin, Franklin App. No. 05AP-818,2006-Ohio-2749, at ¶ 31-32 (analyzing rape counts based on sexual conduct alleged in indictment). See, also, State v. Fritsch (Nov. 19, 1986), Hamilton App. No. C-850746 (testimony indicating cunnilingus not *Page 27 
sufficient to support rape charge that alleged vaginal intercourse);State v. Lucas (Sept. 21, 2001), Montgomery App. No. 18644 (conviction for rape requires evidence of sexual conduct of type alleged in indictment).
 {¶ 62} If the State had wanted to amend the indictment to allege a different type of sexual conduct to conform with the evidence presented at trial, it could have done so pursuant to Crim.R. 7(D). State v.Smith, Franklin App. No. 03AP-1157, 2004-Ohio-4786. The State made no such request. Although we recognize the difficulty inherent in proving sexual conduct involving a child victim, this difficulty does not absolve the State of its burden to present sufficient evidence to support all of the allegations made against a defendant. By alleging a specific type of sexual conduct in counts 4, 10, 13, 14, and 16,[8]
the State had the burden to prove those allegations beyond a reasonable doubt for each rape count. For these five counts of rape by vaginal penetration, the State failed to do so.
 {¶ 63} When evidence is insufficient to prove a defendant committed a specific offense, but the evidence is sufficient to support a guilty verdict on a lesser included offense, a reviewing court may modify a judgment to reflect a conviction on the lesser include offense.Frazier, at ¶ 28, citing R.C. 2945.79(D), Crim.R. 33(D) and App.R. 12(B). Gross sexual imposition is a lesser included offense of rape.State v. Johnson (1988), 36 Ohio St.3d 224, 226; State v. Gale, Franklin App. No. 05AP-708, 2006-Ohio-1523, at ¶ 14. J.S.'s testimony about repeated incidents of appellant touching her breasts and touching and licking her vagina, while not sufficient to prove sexual conduct *Page 28 
by vaginal penetration, is sufficient evidence to find that appellant engaged in sexual contact with her as defined in R.C. 2907.01(B) to support convictions for gross sexual imposition.
 {¶ 64} In count 4, the State alleged that appellant engaged in sexual conduct with J.S. between August 1998 and July 1999. Further, in count 10, the State alleged that appellant engaged in sexual conduct with J.S. between August 1999 and July 2000. J.S. testified that appellant would walk into the bathroom and ask if he could lick her dry. J.S. testified that she let him lick her vagina twice. She testified that appellant's conduct began in the 5th grade and continued in the 6th grade, between August 1, 1998 and July 31, 2000. Therefore, this testimony is sufficient evidence for a trier of fact to find that appellant engaged in sexual contact as defined in R.C. 2907.01(B) with J.S. in the time frame alleged in counts 4 and 10. Thus, the evidence is sufficient to support convictions for GSI on these counts.
 {¶ 65} The remaining three counts, 13, 14, and 16, are not supported by sufficient evidence. The State did not present testimony of any specific conduct alleged in these time frames not already covered by the GSI counts 15 and 16. Thus, there is insufficient evidence in the record to support the lesser convictions of GSI on these counts.
 {¶ 66} We next examine the sufficiency of the evidence supporting appellant's conviction for child endangering. In order to be convicted of child endangering, the State had to prove that appellant enticed, coerced, permitted, encouraged, compelled, hired, employed, used, or allowed J.S., who was under 18 years of age, to act, model, or in any other way participate in, or be photographed for, the production, presentation, *Page 29 
dissemination, or advertisement of any material or performance that appellant knows or reasonably should know is obscene, is sexually-oriented matter, or is nudity-oriented matter. R.C.2919.22(B)(5).
 {¶ 67} "Nudity-oriented matter" is defined as any material or performance that shows a minor in a state of nudity and that, taken as a whole by the average person applying contemporary community standards, appeals to prurient interest. R.C. 2919.22(D)(4)(b).
 {¶ 68} Appellant contends that because J.S. did not testify precisely when these pictures were taken, and because the alleged photographs were never produced, his conviction is not supported by sufficient evidence. We disagree.
 {¶ 69} In count 8, the State alleged that between August 1, 1999 and June 1, 2001, appellant recklessly encouraged, used, or allowed J.S., who was under 18 years of age, to be photographed for the production or dissemination of material that he knew or reasonably should have known was obscene, sexually-oriented matter, or nudity-oriented matter in violation of R.C. 2919.22. As already noted, it is not necessary for the State to prove the exact date and time of this offense. SeeFrazier, supra, at fn.1; State v. Geboy (2001), 145 Ohio App.3d 706,724. It is sufficient for the State to prove that the alleged offense occurred at or about the time charged. Id. This concept is more significant here, where the act complained of is not one of a series of acts over an extended period of time but, rather, is one act that either did or did not occur. J.S. testified that appellant requested nude pictures of her when he was working out of town as a flight attendant. Appellant worked out of town as a flight attendant sometime after he began dating Julie Crosky in April 1998. J.S. testified that she took these pictures *Page 30 
after her brother was born in the end of 1998. She further testified that appellant's conduct began in the 5th grade and ended in the 8th grade, at the end of the time frame alleged. This testimony is sufficient evidence for the trier of fact to find that the nude pictures of J.S. were taken within the time frame set forth in count 8 of the indictment.
 {¶ 70} The photographs did not need to be admitted in order to find appellant guilty of this count. See State v. Stewart (1996),111 Ohio App.3d 525, 535-536 (affirming child endangering conviction based on victim's descriptions of photographs she was forced to take); State v.Casto (Sept. 13, 2000), Medina App. No. 2977-M (same). J.S. testified that after appellant asked for more nudity in the pictures, she took naked pictures of herself and pictures of her vagina. Her testimony describing the photographs is sufficient for a trier of fact to find that appellant encouraged J.S. to take nude pictures of herself and that the pictures were nudity-oriented material.
 {¶ 71} Appellant's child endangering conviction is supported by sufficient evidence.
 {¶ 72} Lastly, we examine the sufficiency of the evidence supporting appellant's conviction for disseminating matter harmful to juveniles. In order to convict appellant of disseminating matter harmful to juveniles, the State had to prove beyond a reasonable doubt that appellant, with knowledge of its character or content, recklessly delivered, furnished, disseminated, provided, exhibited, or presented to J.S., a juvenile, any material that is obscene or harmful to juveniles. R.C. 2907.31(A)(1). Material that is harmful to juveniles includes material describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic in any form, to which all of the following apply:
 (1) The material or performance, when considered as a whole, appeals to the prurient interest in sex of juveniles. *Page 31 
 (2) The material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles.
 (3) The material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles.
R.C. 2907.01(E).[9]
 {¶ 73} J.S. testified that appellant showed her images of different sexual acts in magazines and videos. She testified that the images included "a guy and a girl. Sometimes it was two guys. Sometimes it was two girls." Some of the images also displayed more than two people having sex. Her descriptions of the images she was shown are sufficient for a trier of fact to conclude that the images were harmful to a juvenile. State v. Carter (Nov. 27, 2000), Clermont App. No. CA2000-01-003.
 {¶ 74} Appellant first argues that his conviction for disseminating matter harmful to juveniles is not supported by sufficient evidence because J.S. did not testify when these events occurred. We disagree. In count 7, the State alleged that appellant disseminated material harmful to juveniles between August 24, 1998 and December 31, 2000. J.S. testified that appellant showed her these videos and magazines when she was in the 5th grade, after her school sent home a letter indicating that it would start sex education at school. J.S. entered the 5th grade in August 1998. Her testimony is sufficient evidence to place the events in the time frame set forth in count 7 of the indictment. *Page 32 
 {¶ 75} Appellant also argues that because the images were not presented to the jury, and because there was no expert testimony about obscenity, the jury could not have found them to be harmful to juveniles or obscene. Again, we disagree. The State does not need to present the actual material that was presented to J.S. See State v. Toth, Lorain App. No. 05CA008632, 2006-Ohio-2173, at ¶ 53; State v. Harris (May 23, 1986), Lucas App. No. L-85-057; State v. Huntsman (Dec. 7, 1998), Stark App. No. 98-CA-0012. Victim testimony concerning the contents of the material is sufficient to establish that the material was either harmful to juveniles or obscene. Toth; State v. Musgrave (Dec. 3, 1998), Summit App. No. 18260; In re Z.C., Montgomery App. No. 21231, 2006-Ohio-5378, at ¶ 16.
 {¶ 76} In summary, we find that appellant's convictions for GSI (counts 1, 5, 6, 11, 15, and 17), child endangering (count 8), disseminating matter harmful to juveniles (count 7) and rape (counts 9 and 12) are supported by sufficient evidence. We further find that the rape convictions on counts 4, 10, 13, 14, and 16 were not supported by sufficient evidence. However, the evidence presented at trial supported convictions on the lesser included offense of GSI on counts 4 and 10.
 {¶ 77} Appellant's manifest weight of the evidence challenge requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of *Page 33 
fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." `Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction." `Id.
 {¶ 78} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973;State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 79} Although appellant highlights a number of alleged inconsistencies in J.S.'s testimony, the jury heard her testimony firsthand and could evaluate her credibility. We cannot say that the jury clearly lost its way in making this decision. While J.S. was not very specific in describing the criminal conduct, her testimony was generally consistent, and we cannot say that the jury's verdict reflected a manifest miscarriage of justice. The *Page 34 
jury obviously chose to believe J.S.'s accusations and disbelieve appellant's denials. This was within the province of the jury.
 {¶ 80} For the foregoing reasons, we sustain in part appellant's third assignment of error to the extent appellant argued that his convictions for rape on counts 4, 10, 13, 14 and 16 were not supported by sufficient evidence. However, pursuant to Crim.R. 33(A)(4), R.C. 2945.79(D), and App.R. 12(B), we modify the guilty verdicts on counts 4 and 10 from rape to gross sexual imposition, felonies of the third degree. We overrule the remainder of appellant's third assignment of error.
 {¶ 81} By his fourth assignment of error, appellant contends that the not guilty verdicts on counts 2 and 3 constitute double jeopardy and are a due process bar to his convictions for the other counts of rape and GSI. We disagree.
 {¶ 82} Appellant relies on Issac v. Grider (C.A.6, 2000), 211 F.3d 1269, an unpublished federal court of appeals decision, to support this assignment of error. His reliance is misplaced. In Isaac, the defendant was charged with a number of counts for the sexual abuse of four boys. Five of those counts alleged, with identical language, that Isaac committed sodomy by engaging in sexual intercourse with a boy under 14 between January and April 1994. Five other counts alleged, with identical language, that Isaac committed sexual abuse by engaging in sexual contact with a boy under 14 during the winter/spring of 1994. At trial, the trial court apparently dismissed two of the sodomy counts and two of the sexual abuse counts and instructed the jury on three duplicate counts of sodomy and three duplicate counts of sexual abuse. The jury found him guilty of those counts. *Page 35 
 {¶ 83} In his petition for habeas corpus, Isaac argued that given the duplicative language of the counts, and the trial court's dismissal of some of the counts, double jeopardy barred his convictions. The court agreed, noting that because of the duplicative language in the counts, it was possible that the jury convicted Isaac of conduct reflected in the counts that the trial court had already dismissed.
 {¶ 84} In this case, there is no double jeopardy problem. Of the 17 counts against appellant, count 2 was the only rape count and count 3 was the only GSI count that alleged conduct occurring before July 31, 1998. It is clear that the jury did not believe appellant committed any illegal conduct before July 31, 1998. This finding is based on J.S.'s testimony that she did not meet appellant until April 1998, and that the abuse did not start until the 5th grade. J.S. would not have begun the 5th grade until the fall of 1998, which is after the time period alleged in counts 2 and 3. Thus, there is no uncertainty as to the basis for the jury's not guilty verdicts on those counts. Nor are the acquittals on counts 2 and 3 inconsistent with the guilty verdicts on the remaining counts.
 {¶ 85} Appellant's fourth assignment of error is overruled.
 {¶ 86} In his fifth assignment of error, appellant contends that the indictment charging him with multiple counts of rape and GSI violated his constitutional rights because it did not connect each count with a distinct and differentiated incident of alleged sexual abuse. We disagree.
 {¶ 87} We first note that appellant did not object to the indictment on these grounds in the trial court. Crim.R. 12(C)(2) requires a defendant to object to the indictment before the trial court. The "`failure to timely object to the allegedly defective indictment constitutes a waiver of the issues involved.'" State v. Schneider, Medina App. *Page 36 
No. 06CA0072-M, 2007-Ohio-2553, at ¶ 20, quoting State v. Biros (1997),78 Ohio St.3d 426, 436; State v. Brady, Cuyahoga App. No. 87854,2007-Ohio-1453, at ¶ 139. Thus, appellant's failure to object to the indictment in the trial court waives all but plain error. State v.Carnes, Brown App. No. CA2005-01-001, 2006-Ohio-2134, at ¶ 11; State v.Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, at ¶ 14. Therefore, we will review this assignment of error under a plain error standard.
 {¶ 88} Appellant, relying on State v. Vitale (1994),96 Ohio App.3d 695, contends that the indictment violates his right to be tried only for the crimes on which the grand jury found probable cause. While we agree that Vitale stands for the proposition that a defendant can be indicted only for the crimes on which the grand jury found probable cause, that proposition is inapplicable here. In Vitale, the court found error in the trial court's decision to allow an indictment to be amended to change the date of a charged theft offense. This amendment, theVitale court reasoned, created the risk that the defendant could be convicted of an offense that was not presented to the grand jury. Id. at 699. There is no such concern here, as the State did not amend the indictment against appellant. Vitale is inapplicable to the present case, and this portion of appellant's fifth assignment of error is overruled.
 {¶ 89} Next, appellant contends that the indictment violated his right to be informed of the nature of the charges against him to allow him to defend himself against the charges and to protect himself from double jeopardy. An indictment is sufficient if it (1) contains the elements of the charged offense; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against double jeopardy.Valentine v. *Page 37 Konteh (C.A.6, 2005), 395 F.3d 626, 631, citing Russell v. U.S. (1962),369 U.S. 749, 82 S.Ct. 1038.
 {¶ 90} Appellant does not contest that the indictment contained the elements of each count. Therefore, we must assess whether the indictment provided appellant with adequate notice of the charges against him so that he could mount a defense to those charges. Fair notice is essential in criminal prosecutions. Id. at 631-632. Appellant, relying in large part on Valentine, claims that the indictment failed to provide him fair notice because it did not connect each count to a distinct and differentiated incident. We disagree.
 {¶ 91} In Valentine, the defendant was charged with 20 identically-worded counts of child rape and 20 identically-worded counts of felonious sexual penetration of a child. No attempt was made to differentiate any of the counts. At trial, the child victim was able to testify to "about twenty" occasions of forced fellatio and "about fifteen" instances of vaginal penetration. No other evidence as to the number of instances was presented. The jury convicted Valentine of all 40 counts. Id. at 629. The federal district court granted Valentine a writ of habeas corpus, because the identically-worded counts in the indictment deprived Valentine of his due process rights to notice of the charges against him. The Valentine court affirmed. The court noted that because the 40 counts "were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself." Id. at 633. Valentine was convicted "for a generic pattern of abuse rather than for forty separate abusive incidents." Id. at 634.
 {¶ 92} In the instant matter, appellant was not prosecuted for multiple undifferentiated criminal offenses or for a generic pattern of abuse. The indictment *Page 38 
provided appellant with notice of the charges against him and differentiated the multiple counts by time and/or by sexual conduct. For example, although counts 9 and 10 both alleged rape offenses in the same time period, they alleged different sexual conduct: count 9 alleged digital vaginal penetration, and count 10 alleged vaginal penetration.
 {¶ 93} Additionally, the prosecution attempted to distinguish the multiple counts by eliciting testimony from J.S. as to her age and grade in school at the time of each offense. See Yaacov (rejectingValentine challenge based on the prosecution's attempt to distinguish each separate offense instead of relying on estimates of abuse);State v. Register (Kan.App. 2006), 125 P.3d 1089 (affirming convictions based on "carbon-copy" counts where evidence presented at trial clearly identified different incidents). J.S. was able to place certain offenses within a particular time frame by tying the offense to a school year. For instance, J.S. testified that the incident on the air mattress occurred in either the 6th or 7th grade. She was also able to specifically testify about a number of distinct acts that appellant committed. This is not a case where the victim could only estimate or guess how many times she was abused. State v. Tobin, Greene App. No. 2005 CA 150, 2007-Ohio-1345, at ¶ 14-16. The State was able to prove separate occurrences through J.S.'s testimony. See Yaacov at ¶ 22.
 {¶ 94} An indictment must also protect the defendant against double jeopardy by enabling a defendant to plead a former acquittal or conviction to bar future prosecutions for the same offense.Russell, at 764; Valentine, at 631. Multiple, identical and undifferentiated counts of an indictment are not sufficient to satisfy double jeopardy protections. Id. at 636 (indictment alleging 20 identical counts of rape and 20 identical *Page 39 
counts of felonious sexual penetration of a minor violated defendant's right to be protected from double jeopardy).
 {¶ 95} The counts in appellant's indictment were not like the multiple, identical and undifferentiated counts that theValentine court found to be deficient. Id. ("noting that the constitutional error in this case is traceable * * * to the fact that there was no differentiation among the counts."). As we previously noted, the multiple counts in the case at bar alleged different time periods and different sexual conduct. See State v. Russell, Cuyahoga App. No. 88008, 2007-Ohio-2108, at ¶ 18 (rejecting Valentine challenge to indictment); State v. Rice, Cuyahoga App. No. 82547, 2005-Ohio-3393, at ¶ 24 (rejecting Valentine challenge where testimony indicated differentiation among identically-worded counts).
 {¶ 96} Appellant's fifth assignment of error is overruled.
 {¶ 97} In his sixth assignment of error, appellant briefly addresses a variety of evidentiary and procedural rulings made by the trial court. Appellant first claims that the trial court improperly allowed J.S. to testify with the help of an exhibit that was not based on her own personal knowledge. Appellant claims that the exhibit, which contained J.S.'s age and school grade for each year, was used to assist her in identifying the time frame when the abuse occurred. Appellant did not object to the use of the exhibit and has, therefore, waived all but plain error on appeal. Appellant has made no attempt to show plain error. Moreover, it is well established that the admission or exclusion of evidence rests within the sound discretion of the trial court.State v. Robb (2000), 88 Ohio St.3d 59, 68. Even if appellant had objected to the admission of the exhibit, we fail to see how the trial court abused its discretion under these circumstances. *Page 40 
 {¶ 98} Second, appellant claims that he was entitled to a bill of particulars that identified the type of sexual behavior that constituted each charge. He claims that the lack of this knowledge prejudiced his ability to form a defense. We disagree. First, the State did allege the type of sexual behavior that constituted each rape charge in the indictment. To the extent that the state did not identify specific types of sexual contact in the GSI counts, we note that appellant consistently denied any sexual abuse, even claiming during his closing argument that the allegations of sexual abuse were, in his own words, "false and fabricated." Given the nature of appellant's defense, the type of sexual behavior alleged by the State was of no consequence. Because appellant denied any acts of sexual abuse, appellant cannot show that he was prejudiced by his failure to receive a bill of particulars that identified the specific type of sexual behavior that constituted each charge.
 {¶ 99} Third, appellant claims the trial court improperly limited his time to cross-examine J.S. and limited his ability to call witnesses. Again, we disagree. Under Evid.R. 611(A), the trial court must "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as [to] (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Limiting "`cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion.'"State v. Treesh, 90 Ohio St.3d 460, 480, quoting State v. Acre (1983),6 Ohio St.3d 140, 145. Abuse of discretion connotes more than an error of law or *Page 41 
judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 100} Appellant began his cross-examination of J.S. on March 22, 2006. The next day he continued his cross-examination of J.S. After an hour and a half of questioning, the trial court told appellant that his examination was going on too long and that he needed to ask his questions more specifically. At the end of the day, the prosecutor informed the trial court that appellant had been questioning J.S. for a total of seven hours. Even though appellant decided to end questioning on the 23rd, the trial court allowed him to further question her the next day. On that day, the prosecutor noted that J.S. had now been testifying for 13 hours. The trial court again instructed appellant that he needed to better formulate his questions so that the questioning did not last much longer. The trial court even allowed appellant to ask J.S. additional questions after his recross-examination. The trial court acted with a great deal of patience in dealing with appellant and did not abuse its discretion by ultimately limiting his time to question this witness after 13 hours of cross-examination.
 {¶ 101} Additionally, contrary to appellant's contention, the trial court did not imply that appellant had only two weeks to present his case. The trial court advised appellant that he should streamline his questions, which would help him in presenting his case. The trial court did not indicate that appellant's time to present his case would be terminated at the end of the jury's two-week service.
 {¶ 102} Fourth, appellant claims the trial court scolded him, displayed intemperate behavior toward him and was biased against him. The alleged improper, intemperate, and biased conduct by the trial court involved instances where the trial court sustained *Page 42 
objections to appellant's conduct or attempted to instruct the appellant how to proceed. We find no improper, intemperate or biased conduct displayed by the trial court. Additionally, we specifically reject appellant's claim that the trial court disparaged appellant's hearing loss and "subtly suggested" that appellant faked his hearing loss. A reading of the portion of the transcript relied upon by appellant does not support appellant's claim.
 {¶ 103} Fifth, appellant claims the trial court interfered with his right to confer with his standby counsel. A trial court may permit the defendant to represent himself and also permit defendant to enjoy the additional assistance of standby counsel. McKaskle v. Wiggins (1984),465 U.S. 168, 170-171, 104 S.Ct. 944; State v. Martin,103 Ohio St.3d 385, 2004-Ohio-5471, at ¶ 28. During the trial, the trial court twice denied appellant's requests to confer with his standby counsel. The trial court denied those requests because it did not want the jury to infer that standby counsel actually represented appellant, who had voluntarily decided to represent himself. The trial court did not err by limiting appellant's conferences with standby counsel. Excessive involvement of standby counsel may destroy the appearance that a defendant is acting pro se. McKaskle, at 181. The trial court noted that it had "no problems with Mr. Crosky consulting with either — with his advisory counsel." The trial court simply wanted to make sure that the jury understood appellant represented himself and was not being represented by his standby counsel. Additionally, appellant does not explain how he was prejudiced in those instances that the trial court prevented him from conferring with standby counsel.
 {¶ 104} Sixth, appellant claims the trial court improperly allowed the State to have eight preemptory challenges when he was only allowed four. We disagree. In a case *Page 43 
involving multiple defendants, R.C. 2945.21(A)(3) allows the State to peremptorily challenge a number of jurors equal to the total number of such challenges allowed to all the defendants. Appellant and his wife were allowed a total of eight preemptory challenges. Therefore, the State was also allowed eight preemptory challenges.
 {¶ 105} Seventh, appellant claims the trial court physically separated him from Julie Crosky during trial and forbid them from presenting a joint defense in the matter. We can not discern from the record whether appellant and Julie Crosky were physically separated during the trial. However, even if they were, because they each represented themselves, and one could not represent the other, it is entirely proper for the trial court to place the co-defendants at different tables in front of the jury. Additionally, because appellant and Julie Crosky were not incarcerated during the trial, they had ample opportunity to confer and to present a joint defense if that was their intention. They simply could not give the appearance to the jury that appellant was representing Julie Crosky or vice-versa. The record does not support appellant's contention that the trial court prevented him from presenting a joint defense with Julie Crosky.
 {¶ 106} Eighth, appellant claims the trial court improperly prevented him from fully examining a witness. Appellant called K.W., a friend of J.S., to provide testimony consistent with previous audiotape interviews appellant and Julie Crosky conducted of her. K.W. could not recall a number of statements she allegedly made in those interviews. She denied that hearing the interviews would refresh her recollection. Appellant claimed that K.W.'s testimony contradicted some of her previous statements and requested to impeach her with the audiotape of the previous interviews. The trial court did not allow appellant to play the interviews. *Page 44 
 {¶ 107} Appellant claims the taped interviews should have been admitted as evidence pursuant to Evid.R. 607 or 612. We disagree. Evid.R. 607 allows a party to impeach its own witness through a prior inconsistent statement only upon a showing of surprise and affirmative damage. State v. Darkenwald, Cuyahoga App. No. 83440, 2004-Ohio-2693, at ¶ 28. The existence of surprise and affirmative damage is left to the trial court's discretion. State v. Haynes (Nov. 5, 1997), Summit App. No. 17865. To show surprise, the party must show that the witnesses' testimony is inconsistent with prior statements and that the party did not have reason to believe that the witness would recant when called to testify. Darkenwald. Affirmative damage can be established only if the witness testifies to facts which contradict, deny, or harm the calling party's trial position. Dayton v. Combs (1993), 94 Ohio App.3d 291, 299. Affirmative damage is not shown where the witness denies knowledge of the facts contained in the prior statement or where she states that she does not remember the facts. Id.
 {¶ 108} K.W.'s testimony did not hurt appellant's trial position. In fact, she agreed that J.S. never told her about any sexual abuse and that J.S. seemed fine and happy. She also testified that appellant never touched her. She could not, however, recall a number of statements she allegedly made in the interviews. Because appellant has failed to show how K.W.'s testimony damaged his defense, we find no abuse of discretion by the trial court.
 {¶ 109} Evid.R. 612 allows a party's counsel to refresh a witnesses' recollection by showing the witness a prior statement. However, the statement may not be read aloud or otherwise placed before the jury.State v. Ballew (1996), 76 Ohio St.3d 244, 254. Additionally, whether a party may refresh the recollection of his own witness is a matter *Page 45 
for the trial court's sound discretion. State v. Pace (Aug. 6, 1998), Franklin App. No. 97APA10-1425. K.W. stated that hearing the interviews would not refresh her recollection. Therefore, the trial court did not abuse its discretion when it refused to allow appellant to use the taped interviews.
 {¶ 110} Ninth, appellant claims the trial court prevented him from supporting his defense that the State was trying to scare off witnesses by sending them letters setting forth the charges against him. Specifically, appellant asked one witness how the receipt of the letter made her feel. The trial court sustained the State's objection to the question on grounds of relevancy.
 {¶ 111} The admission or exclusion of evidence rests within the sound discretion of the trial court. Robb, supra, at 68. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore.
 {¶ 112} Evid.R. 402 provides for the admission of relevant evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. State v. Cunningham, Franklin App. No. 06AP-145,2006-Ohio-6373, at ¶ 34. The witness's reaction to the letter was irrelevant to the allegations involved in this case or to appellant's attempted defense. The trial court did not abuse its discretion by sustaining the State's objection to the question. *Page 46 
 {¶ 113} Tenth, appellant claims the trial court erred when it refused to admit a written report from a case worker with Franklin County Children Services. However, the record does not indicate that appellant requested the admission of this document into evidence. Therefore, appellant has no basis to complain about the absence of this document from the record.
 {¶ 114} Eleventh, appellant claims the trial court, sua sponte, should have appointed him an investigator to assist him in interviewing witnesses, because he was not allowed to contact certain witnesses who had restraining orders against him. We disagree. Appellant cites to no legal support for the proposition that a trial court must sua sponte appoint an investigator and we find no such support.
 {¶ 115} Twelfth, appellant claims the trial court erred when it did not admit the entire "Chicken Soup" book. The trial court admitted a copy of the book's cover and two pages of the book, in which J.S. denied being sexually abused. Appellant claims the rest of the book would show that it was inspirational and would demonstrate J.S.'s healthy state of mind. The trial court did not abuse its discretion by refusing to admit the entire book.
 {¶ 116} Thirteenth, appellant claims the trial court limited his voir dire by preventing him from explaining why he was representing himself when asked by a potential juror. We disagree. The scope of the examination during voir dire is within the sound discretion of the trial court and the judgment will not be reversed absent a showing that the trial court abused its discretion. State v. Atalla, 157 Ohio App.3d 698,2004-Ohio-3414, at ¶ 13, citing State v. Jenkins (1984),15 Ohio St.3d 164, 186. The trial court did not abuse its discretion by preventing appellant from answering the question. Given the circumstances involved in appellant's decision to represent himself, allowing appellant *Page 47 
to answer the question would bring up a number of issues not relevant to a determination of whether the jurors would be qualified, fair, and impartial. See State v. Saxton, Lorain App. No. 02CA008029, 2003-Ohio-3158, at ¶ 43, citing Vega v. Evans (1934), 128 Ohio St. 535, paragraph one of the syllabus (purpose of voir dire is to determine qualification of jurors and whether they are free from bias or prejudice); State v. Williams (1991), 75 Ohio App.3d 102, 109. Additionally, appellant cannot show that he was prejudiced by the trial court's instruction.
 {¶ 117} Finally, appellant claims the trial court provided him erroneous legal advice during trial. In both instances cited by appellant, the trial court was not advising appellant. The trial court was making rulings. Specifically, appellant first claims the trial court advised him that he could not call legal counsel for another party in a previous civil case in which he was involved. The trial court was addressing a motion to quash a subpoena filed by the attorney. Appellant does not claim the trial court's decision to quash the subpoena was in error. Appellant's argument is without merit.
 {¶ 118} Appellant also claims the trial court erroneously advised him regarding the attorney-client privilege. Again, however, the trial court was not advising appellant, but was determining whether Julie Crosky wanted to waive her attorney-client privilege when her former attorney, Doug Shaw, testified.[10] Appellant does not claim the trial court'sdecision in this regard was in error. Additionally, appellant claims the trial court erroneously advised him that if he asked Shaw any questions about his representation, *Page 48 
the State could then ask him questions about his communications with Shaw that related to this matter. This is a correct statement of the law.
 {¶ 119} Whether considered in isolation or cumulatively, the alleged errors in appellant's sixth assignment of error did not violate appellant's right to a fair trial. Therefore, appellant's sixth assignment of error is overruled.
 {¶ 120} Appellant contends in his seventh assignment of error that the trial court erred in handling the grand jury testimony of J.S. Again, we disagree.
 {¶ 121} Before trial, appellant sought the grand jury testimony of a detective that he claimed lied to the grand jury. At some later time, J.S.'s testimony became the focal point of appellant's request. On the second day of trial, the trial court declined to provide appellant a copy of J.S.'s grand jury testimony. The trial court could not identify any reason to provide him with the transcript. Subsequently, the trial court indicated that it reviewed J.S.'s grand jury testimony and found no inconsistencies between it and her trial testimony.
 {¶ 122} Disclosure of grand jury testimony, other than that of the defendant or co-defendant, is controlled by Crim.R. (6)(E). State v.Greer (1981), 66 Ohio St.2d 139, paragraph one of the syllabus. The release of such testimony for use during trial is within the trial court's discretion. Id. The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore, supra. An accused is not entitled to grand jury testimony during trial unless the ends of justice require it and there is a showing that a "particularized need" for disclosure exists. Greer, at paragraph two of the syllabus. The *Page 49 
burden to demonstrate a particularized need is on the defendant.State v. Roberts (1976), 50 Ohio App.2d 237.
 {¶ 123} At trial, appellant failed to make any showing of a particularized need for the grand jury testimony. He now claims a particularized need for the grand jury testimony based upon alleged inconsistencies between J.S.'s trial and grand jury testimony. Appellant contends that inconsistencies in J.S.'s trial and grand jury testimony regarding the dates and frequency of sexual abuse could have damaged her credibility.
 {¶ 124} A trial court does not abuse its discretion when it denies access to grand jury testimony of a witness where the only claim of particularized need consists of an assertion that the defendant needs to examine the testimony for inconsistencies which can be used to impeach that witness. State v. Henness (Feb. 6, 1996), Franklin App. No. 94APA02-240, citing State v. Mack (1995), 73 Ohio St.3d 502; State v.Tillman, Butler App. No. CA2003-08-185, 2004-Ohio-1030, at ¶ 8. This argument could be made in every case and would allow disclosure of virtually all grand jury testimony. State v. Leach (Feb. 20, 2001), Clermont App. No. CA2000-05-033, citing State v. Webb (1994),70 Ohio St.3d 325, 337.
 {¶ 125} Appellant's desire for J.S.'s grand jury testimony is based on claimed inconsistencies between such testimony and her trial testimony. The trial court found no such inconsistencies. The trial court did not abuse its discretion by declining to provide appellant with the grand jury testimony, as his claim did not demonstrate a particularized need for the testimony. Appellant's seventh assignment of error is overruled. *Page 50 
 {¶ 126} Appellant contends in his eighth assignment of error that the Supreme Court of Ohio's severance remedy in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, as applied to his case, violated due process and ex post facto principles against retroactivity and that trial counsel was ineffective for failing to raise this argument in the trial court. We disagree.
 {¶ 127} This court has repeatedly rejected due process and ex post facto arguments against the Foster court's severance remedy. State v.Ragland, Franklin App. No. 04AP-829, 2007-Ohio-836, at ¶ 9; State v.Pruitt, Franklin App. No. 06AP-1184, 2007-Ohio-2331, at ¶ 5; State v.Horton, Franklin App. No. 06AP-311, 2007-Ohio-4309, at ¶ 68. Additionally, because the Foster court's remedy does not violate ex post facto principles, appellant's counsel was not ineffective for failing to raise an objection on those grounds. Id. at ¶ 50; Pruitt, at ¶ 8. Appellant's eighth assignment of error is overruled.
 {¶ 128} In appellant's ninth assignment of error, he first contends that his sentence is not calculated to further the purposes of felony sentencing set forth in R.C. 2929.11. He also contends the trial court did not adequately address the sentencing factors in R.C. 2929.12. We disagree.
 {¶ 129} The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). A court imposing a sentence for a felony "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code." R.C. 2929.12(A). In the exercise of this discretion, a court "shall consider" the non-exclusive list of seriousness and recidivism factors set forth in R.C. 2929.12(B), (C), (D), and (E). *Page 51 
 {¶ 130} In reviewing appellant's sentence, we must consider whether it is clearly and convincingly contrary to law. State v. Burton, Franklin App. No. 06AP-690, 2007-Ohio-1941, at ¶ 29. Appellant summarily claims that his sentence is not reasonably calculated to further the purposes of felony sentencing. This bare claim does not demonstrate that the prison sentences are clearly and convincingly contrary to law. Given his repeated acts of sexual abuse committed against his wife's daughter, who was under age 13, we cannot say that the prison terms imposed are clearly and convincingly not reasonably calculated to protect the public from his future crimes and to punish him.
 {¶ 131} Additionally, appellant claims the trial court did not consider that he had no prior record, and that he did not use violence, threats of violence, or drugs or alcohol to commit the offenses. Again, we disagree. Appellant's sentencing entry indicates that the trial court considered the purposes and principles of sentencing set forth in R.C.2929.11 and the factors set forth in R.C. 2929.12. Therefore, the trial court properly considered the requisite statutory factors in sentencing appellant. State v. Sharp, Franklin App. No. 05AP-809, 2006-Ohio-3448, at ¶ 6.
 {¶ 132} Moreover, to the extent appellant claims his sentence is excessive due to his lack of a prior record, and that he did not use violence, threats of violence, or drugs or alcohol to commit the offenses, other statutory factors underscore the seriousness of his conduct. See R.C. 2929.12(B)(1) (age of victim); R.C. 2929.12(B)(2) (psychological harm); R.C. 2929.12(B)(6) (relationship with victim facilitated offenses). Appellant has not shown that his sentences are clearly and convincingly contrary to law. *Page 52 
 {¶ 133} Appellant also contends in his ninth assignment of error that the trial court adjudicated him a sexual predator without adequate notice of the hearing and that the adjudication was not supported by sufficient evidence. We disagree.
 {¶ 134} R.C. 2950.09(B)(2) requires a trial court to give the offender notice of the date, time, and location of the hearing required to determine whether the offender is a sexual predator pursuant to R.C.2950.09(B)(1)(a). The notice requirement for sexual offender classification hearings is mandatory. State v. Gowdy (2000),88 Ohio St.3d 387, 399. Notice under this statute may be oral or in writing. Id. at 398.
 {¶ 135} After the jury returned its verdicts, the trial court orally notified appellant that it would set a hearing to determine his sexual predator classification. The court noted that it would sentence appellant at the same time. Thus, when appellant's counsel requested, and the trial court scheduled, his sentencing hearing for June 6, 2006, appellant received notice of the time and date of his sexual predator hearing. Moreover, at the hearing, appellant's trial counsel told the trial court that he was ready to proceed with the sexual predator classification hearing. The trial court's notification of appellant of the sexual predator classification hearing was sufficient.
 {¶ 136} Appellant also contends in his ninth assignment of error that the trial court's sexual predator designation was not supported by sufficient evidence, and that the trial court failed to adequately consider the sexual predator factors in R.C. 2950.09. We disagree.
 {¶ 137} In making a sexual predator determination, the trial court shall consider all relevant factors, including, but not limited to, those factors set forth in R.C. 2950.09(B)(3):
 (a)The offender's or delinquent child's age; *Page 53 
 (b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 (d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 (e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender or delinquent child;
 (h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct. *Page 54 
 {¶ 138} These factors are "guidelines for the court to consider and there is no requisite number of factors that must be applicable before an offender can be considered a sexual predator." State v. Lewis (Mar. 13, 2001), Franklin App. No. 00AP-730. No requisite number of these factors must apply before a court finds an offender to be a sexual predator, and the trial court may place as much or as little weight on any of the factors as it deems to be appropriate. State v. Walker, Franklin App. No. 04AP-1107, 2005-Ohio-3540, at ¶ 10; State v.Fears, Franklin App. No. 04AP-1164, 2005-Ohio-2960, at ¶ 6. Because the test is not a balancing one, even one or two of the factors are sufficient as long as the evidence of likely recidivism is clear and convincing. State v. McDonald, Franklin App. No. 03AP-853,2004-Ohio-2571, at ¶ 8.
 {¶ 139} An appellate court review of a sexual predator determination must include a review of the record to determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing standard. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 90. "`Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." `State v. Eppinger (2001),91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469,477. This court will not reverse a trial court's sexual predator judgment as being against the manifest weight of the evidence if there exists some competent, credible evidence going to all the essential elements of the case to support that judgment. State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 32. *Page 55 
 {¶ 140} Appellant claims that the trial court impermissibly considered uncharged allegations of abuse made by his daughter in making its sexual predator determination. We disagree. Evidence of uncharged sexual acts is admissible in sexual predator hearings. State v. Messer, Franklin App. No. 03AP-169, 2004-Ohio-2127, at ¶ 24; State v. Sloan, Richland App. No. 2005-CA-0023, 2005-Ohio-5635, at ¶ 56.
 {¶ 141} The trial court properly considered the appellant's age (R.C.2950.09[B][3][a]), his victim's age (R.C. 2950.09[B][3][c]), appellant's pattern of sexual abuse (R.C. 2950.09[B][3][h]), and appellant's relationship with the victim's mother as well as the impact of his actions on the victim (R.C. 2950.09[B][3][j]). Competent and credible evidence supports the trial court's classification of appellant as a sexual predator. Appellant engaged in a pattern of sexual abuse of J.S., who was between 9 and 13 years of age during the abuse. He also held a position of authority over J.S., as he was dating the victim's mother and spent a lot of time with the family. See State v. Henes (Nov. 2, 2001), Lucas App. No. L-01-1222 (sexual predator designation affirmed where defendant abused stepdaughter while she was between 9 and 13). The trial court did not err by designating appellant a sexual predator.
 {¶ 142} For the foregoing reasons, appellant's ninth assignment of error is overruled.
 {¶ 143} Lastly, appellant contends in his tenth assignment of error that the guilty verdict forms for certain offenses violated R.C.2945.75. In part, we agree.
 {¶ 144} R.C. 2945.75 provides, in pertinent part, that "[w]hen the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, *Page 56 
or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."
 {¶ 145} In State v. Pelfrey, 112 Ohio St.3d 422, 2007-Ohio-256, the Supreme Court of Ohio held that in order to find a defendant guilty of an offense of more serious degree,"a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." Id. at ¶ 14. In that case, the defendant was convicted of one count of tampering with evidence in violation of R.C. 2913.42. He was sentenced for the third degree felony form of the offense because the tampering involved government records. See R.C. 2913.42(B)(4).
 {¶ 146} The Supreme Court of Ohio noted that a conviction for tampering with evidence would normally be a misdemeanor, but for the element that the records were governmental records contained elsewhere in the statute. That situation enhances the offense to a third degree felony. However, the jury's guilty verdict form did not indicate the degree of the offense or the fact that governmental records were involved. Pelfrey, at ¶ 13. Under these circumstances, the court concluded that R.C. 2945.75 mandates that the defendant be convicted of the least degree of the tampering offense. To support a conviction for an enhanced offense, the court concluded that the verdict form itself must contain either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found by the jury. Id. at ¶ 14.
 {¶ 147} Appellant raises this challenge in connection with his convictions for GSI, child endangering, and disseminating matter harmful to juveniles. The jury signed verdict forms for the GSI counts which read, in pertinent part: "[w]e, the jury in this case, find the *Page 57 
Defendant John R. Crosky GUILTY of Gross Sexual Imposition as he stands charged in * * * the Indictment." The verdict form does not contain the degree of the offense or any statement of an aggravating element. Thus, appellant contends that he can be convicted only of the least degree of the offense. We disagree.
 {¶ 148} This court recently considered and rejected this very argument in terms of GSI convictions. See State v. Kepiro, Franklin App. No. 06AP-1302, 2007-Ohio-4593, at ¶ 29-34. There are no additional elements or circumstances over and above the elements of the offense set forth in R.C. 2907.05(A) that enhance the penalty for a GSI conviction. With nothing more than the guilty verdict, appellant is convicted of a third-degree felony. Thus, the reasoning in Pelfrey is not applicable here, and the verdict form did not need to contain the degree of the offense or a statement that an aggravating element has been found by the jury.
 {¶ 149} Appellant also claims that the guilty verdict form for his endangering children conviction violates R.C. 2945.75. Again, we disagree. In pertinent part, that verdict form read: "[w]e, the jury in this case, find the Defendant John R. Crosky GUILTY of Endangering Children as he stands charged in * * * the Indictment." Again, the verdict form does not contain the degree of the offense or any statement of an aggravating element.
 {¶ 150} Like the GSI statute, R.C. 2919.22(B)(5) contains all the necessary elements of the offense. A violation of that statute is a felony of the second degree. R.C. 2919.22(E)(4). There are no additional elements or circumstances over and above the elements of the offense set forth in R.C. 2919.22(B)(5) that enhance the penalty for *Page 58 
the conviction. Thus, the verdict form did not need to contain the degree of the offense or a statement that an aggravating element has been found by the jury.
 {¶ 151} Finally, appellant attacks the guilty verdict form for his disseminating matter harmful to a juvenile conviction. In pertinent part, that verdict form read: "[w]e, the jury in this case, find the Defendant John R. Crosky GUILTY of Disseminating Matters Harmful to a Juvenile as he stands charged in * * * the Indictment." Again, the verdict form does not contain the degree of the offense or any statement of an aggravating element.
 {¶ 152} The trial court sentenced appellant as if he was convicted of a fourth degree felony form of the offense. Disseminating matters harmful to a juvenile may be a first degree misdemeanor, a fifth degree felony, or a fourth degree felony, depending on whether or not certain circumstances existed. R.C. 2907.31(F).
 {¶ 153} The necessary elements of the offense for which appellant was indicted do not require that the State prove that J.S. was under 13 years of age. Nor does the material have to be obscene to constitute the offense. The offense is committed if the material is obscene or harmful to juveniles. The offense is enhanced to a higher degree felony, however, if the State proves that J.S. was under age 13 or the material was obscene. Pursuant to Pelfrey, these additional elements or the offense's degree must be included in the jury's guilty verdict form. Because they were not, appellant may only be convicted and sentenced for the least degree form of the offense, a misdemeanor of the first degree.
 {¶ 154} Accordingly, appellant's tenth assignment of error is overruled with respect to his GSI and child endangering convictions but sustained with respect to his disseminating matter harmful to a juvenile conviction. *Page 59 
 {¶ 155} In conclusion, appellant's first, second, fourth, fifth, sixth, seventh, eighth, and ninth assignments of error are overruled. His third and tenth assignments of error are overruled in part and sustained in part. Accordingly, appellant's convictions on counts 1, 5, 6, 7, 8, 9, 11, 12, 15, and 17 are affirmed. His convictions on counts 4 and 10 are reversed and modified to convictions for gross sexual imposition. His convictions on counts 13, 14, and 16 are reversed. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. The matter is remanded to the trial court to resentence appellant on counts 4 and 10 as offenses of gross sexual imposition. The trial court must also resentence appellant for count 7 as if he was convicted of a first degree misdemeanor form of the offense.
Judgment affirmed in part, reversed in part, and cause remanded withinstructions.
BRYANT and DESHLER, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] J.S. is the daughter of appellant's co-defendant and ex-wife, Julie Crosky. Appellant and Julie Crosky were married in May 2001, but by the time of trial, were divorced.
[2] A month after the trial court's decision, appellant filed an Affidavit of Prejudice against the trial judge. The next day, the trial judge recused herself and the case was transferred to another judge.
[3] Julie Crosky was convicted of two counts of child endangering. SeeState v. Crosky, Franklin App. No. 06-816, 2007-Ohio-6533.
[4] On March 23, 2007, appellant filed with this court a document entitled "Judicial Notice" in which he sought to assert additional assignments of error. These assignments fail to comply with App.R. 12(A)(2) and will not be considered. Additionally, appellant withdrew another pro se assignment of error he previously filed in this appeal.
[5] At trial, Julie Crosky refused to waive the attorney-client privilege concerning her conversations with Shaw.
[6] For the same reasons, the trial court did not abuse its discretion by failing to accept appellant's waiver of any conflict of interest.Wheat, at 163 ("[W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest .").
[7] Contrary to appellant's suggestion, the trial court did not assume that he lacked an understanding of defenses or mitigating evidence. The trial court stated that it assumed that appellant did not understand that his failure to raise any available defenses or his failure to properly introduce those defenses could not be used as grounds for an appeal. Appellant assured the trial court that he did understand that.
[8] These allegations also provide notice to the defendant of the charges and insulate the indictment from constitutional challenges against multiple, undifferentiated charges in these types of cases. See our discussion of appellant's fifth assignment of error, infra.
[9] To the extent appellant claims this statute is unconstitutional, he has waived the argument by not raising it in the trial court.State v. Awan (1986), 22 Ohio St.3d 120.
[10] During his testimony, appellant attempted to question Shaw about perjury prosecutions in Franklin County. The trial court did not abuse its discretion by sustaining the State's objection to that question, as his testimony would have been irrelevant. *Page 1